SELLERS, APPELLANT, *v.* BOARD OF REVIEW, OHIO BUREAU OF EMPLOYMENT SERVICES, ET AL., APPELLEES.

(No. 80AP-741—Decided April 21, 1981.)

*Messrs. Espy & Caulfield* and *Mr. Bennie E. Espy,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Eugene Nevada,* for appellees.

REILLY, J. This is an appeal from a judgment of the Court of Common Pleas of Franklin County.

The record shows that appellant, Joyce E. Sellers, appealed to the Board of Review of the Ohio Bureau of Employment Services for reconsideration of the decision of the Administrator of the Bureau of Employment Services that appellant was discharged from her work for "just cause" pursuant to R.C. 4141.29(D)(2)(a), thereby denying her unemployment benefit rights. The board's decision reads, in part, as follows:

"FINDINGS OF FACT:

"Claimant filed an application for determination of benefit rights on January 29, 1979, with respect to a benefit year beginning January 28, 1979. She filed an additional claim for benefits with respect to the week ending July 7, 1979. Prior to filing said claim, claimant was last employed by the Bureau of Motor Vehicles for whom she worked from March 12, 1979, to June 28, 1979, as a Clerk II. Claimant was under a 120 day probationary status throughout her period of employment. Shortly after beginning work for the Bureau of Motor Vehicles, personal tragedies struck claimant's family which caused her to miss some days of work. Although claimant's absences in April and May, 1979, were mostly for personal illness, she used up accumulated leave time and was working on a negative balance in June, 1979. On May 29, 1979, claimant was given a 60 day evaluation by office manager Wanda Jenkins indicating claimant was average in her work performance. A comment at the top of the evaluation, however, emphasized that claimant had been missing too much work and had to improve in order to meet minimum requirements. Claimant had to miss work on June 12, 1979, due to the death of her mother-in-law. On June 13, 1979, claimant was .2 hours late returning from lunch. She was also .5 hours late the same day returning from a union meeting. On June 15, 1979, claimant missed eight hours to attend her son's criminal trial. On June 18, 1979, claimant's husband was out of state, so claimant missed work in order to attend to his personal business. On June 18, 1979, Ms. Jenkins was ordered to give claimant another evaluation which reflected not only poor attendance but a drop in the quality of her work. Personnel head T. Tefft, recommended that claimant not be retained for employment. On June 25, 1979, a letter was drafted by Department of Highway Safety Director, Robert Chiaramonte, which stated that claimant's employment was being terminated as of June 29, 1979, for unsatisfactory services. The letter was given to claimant on June 28, 1979.

"REASON:

"Issue: Discharged for just cause in connection with work.

"Law applicable: Section 4141.29(D)(2)(a), Revised Code of Ohio * * *

"It is claimant's contention that the majority of the time missed was due to legitimate family or personal reasons involving illness or death. Further, claimant contends there was a personality conflict between herself and Ms. Jenkins with racial connotations; however, although the majority of claimant's time off was excused, claimant was aware as of May 29, 1979, that her attendance was being looked at closely and she must improve. Further, each of the evaluations prepared

by Ms. Jenkins were at the direction of Mr. Tefft[.] Ms. Jenkins has testified that she had no problem getting along with claimant and claimant's work product was not really in question at the time of her dismissal; therefore, claimant's contentions lack sufficient merit.

"The facts set forth above necessitate the conclusion that claimant's discharge was based upon acts by the claimant which constituted a violation of the employment agreement with respect to attendance; therefore, it must be held that claimant was discharged for just cause in connection with work and the disqualification for benefits set forth in Section 4141.29(D)(2)(a), Revised Code of Ohio, was properly imposed."

After appellant's application to institute a further appeal was disallowed, appellant filed an appeal in the Court of Common Pleas of Franklin County, which affirmed the board's order. Thus, appellant has perfected this appeal, including two assignments of error:

"1. The decision of the Court of Common Pleas is not sustained by the evidence, is against the manifest weight of the evidence and is contrary to law.

"2. The Court of Common Pleas erred to the prejudice of Appellant in concluding that it may not substitute its opinion for that of the administrative agency, Board of Review."

Appellant's first assignment of error is well taken. R.C. 4141.29(D)(2)(a) reads, in part, as follows:

"Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following· conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged *for just cause in connection with his work* * * *." (Emphasis added.)

The Court of Appeals for Erie County wrote, in *Schultz* v. *Herman's Furniture* (1976), 52 Ohio App. 2d 161, at pages 162-163 [6 O.O.3d 159], that:

"In regard to initial eligibility for unemployment benefits, absenteeism and tardiness caused by a bona fide illness reported to an employer is not just cause in connection with the work, for a discharge. See annotation, 41 A.L.R. 2d 1158, Section 9; 76 American Jurisprudence 2d 954, 955, Unemployment Compensation, Section 58; *Milwaukee Transformer Co.* v. *Indus. Comm.* (1964), 22 Wis. 2d 502, 126 N.W. 2d 6; *Kelleher* v. *Unemployment Comp. Bd. of Review* (1954), 175 Pa. Super. 261, 104 A. 2d 171; *Crib Diaper Service* v. *Unemployment Comp. Bd. of Review* (1953), 174 Pa. Super. 71, 98 A. 2d 490."

Further, in *Schultz,* the court noted, at page 161:

"* * * In March, the claimant developed chronic gastritis and cholecystitis. From April through June 1975, the claimant was absent from work eleven times and tardy twelve times. Herman's Furniture, Inc., discharged the claimant due to her absenteeism and tardiness. The claimant claims her reported illness was responsible for her absenteeism and tardiness and, therefore, was not a just cause for discharge."

The foregoing case also states that the appellant notified her employer that she would be absent or tardy and the reasons therefor.

This court has written, in *Peyton* v. *Sun T.V. & Appliances* (1975), 44 Ohio App. 2d 10, at page 12 [73 O.O.2d 8], concerning the statutory definition of just cause, that:

"* * * There is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. * * *"

Further, this construction was reiterated in *In re Claim of Krug* (Franklin

Ct. of Appeals No. 77AP-266, August 23, 1977), unreported, where this court stated:

"This court had occasion to construe the words 'just cause' in relation to a resignation in *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10 [73 O.O.2d 8]. We said there that just cause has no slide-rule definition; rather each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. The employee in *Peyton* left his job because he was not suited for that kind of work and could not make a living doing it. On that basis, we held that he had just cause to leave the job and was entitled to benefits."

In this case, as in *Schultz, supra,* appellant's absences were legitimate and approved. For instance, she missed some time because of her stepson's death and subsequently because of her mother-in-law's death. Nevertheless, her employer fired her because she had a negative sick leave balance. This is the basic reason advanced by appellees supporting the discharge. Moreover, the record includes evidence of personal problems which created a stressful work environment for appellant. She testified that such stress caused several headaches for which she took sick leave. She also stated that she had never had stress headaches before.

The record shows that there were two occasions of alleged tardiness for which appellant applied for leave without pay, or personal leave. At any rate, whether or not excused, the evidence is definite that these two instances of alleged tardiness on one day were not the reasons for appellant's termination. Hence, these two instances of alleged tardiness cannot now be utilized to justify the discharge for different reasons, even assuming they would justify such action.

It is noteworthy that appellant was warned on May 29, 1979, that she had to improve her attendance. However, between the time of such warning and the decision to terminate appellant, she was absent two days, plus the two occasions of alleged tardiness. One of these days, June 12, 1979, was because of the death of her mother-in-law. Also stipulated was the violent death of appellant's stepson soon after she began her employment, which involved a substantial part of the sick leave which she used.

Moreover, appellant missed work on June 15, 1979, to attend the trial of the person charged with killing her stepson. Shortly thereafter, appellant was terminated, perhaps triggered by an erroneous understanding since the statement filed by the employer included an allegation that appellant was absent on June 15, 1979 because she had to attend her son's "murder trial." (The word "murder" apparently should have read "murderer's.") Such error was compounded in the referee's findings of fact, quoted above, which refers to appellant's eight-hour absence to "attend her son's criminal trial." There is no evidence to support such a finding, which is clearly against the manifest weight of the evidence.

Appellees apparently contend that misconduct by an employee is not a condition to constitute good cause. There is a distinct difference between unsatisfactory performance under R.C. 124.27 and just cause for discharge pursuant to R.C. 4141.29. Justification for a decision not to retain a probationary employee pursuant to R.C. 124.27 does not ipso facto constitute just cause for discharge under R.C. 4141.29. In order to have just cause for discharge, pursuant to R.C. 4141.29, there must be some fault on the part of the employee involved, in the absence of an overwhelming contractual provision. Such fault does not require misconduct; but, nonetheless, fault must be a factor in the justification for discharge. Otherwise, an employee who finds employment for which he is not suited, or fully qualified, would be discharged for just cause, contrary to the *Peyton* case, noted above.

Accordingly, for the foregoing reasons, there has not been a showing of just cause for appellant's discharge. Therefore, appellant's first assignment of error is sustained.

Appellant's second assignment of error, considering the foregoing determination on the first assignment of error, becomes moot and is therefore overruled.

The judgment is reversed and the cause remanded to the Court of Common Pleas of Franklin County for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

WHITESIDE and NORRIS, JJ., concur.