EUCLID MANOR NURSING HOME,
APPELLANT, *v.* BOARD OF REVIEW,
OHIO BUREAU OF EMPLOYMENT
SERVICES ET AL., APPELLEES.

(No. 49144 — Decided July 8, 1985.)

*Willacy & LoPresti* and *Timothy A.
Marcovy,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney
general, *John C. Polito, Fred J. Pom-
peani* and *Bessie J. Cassaro,* for ap-
pellees.

PARRINO, P.J. Euclid Manor Nurs-
ing Home, Inc. ("Euclid Manor") ap-
peals from the trial court's affirmance of
the Ohio Bureau of Employment Ser-
vices' ("OBES") order granting un-
employment compensation benefits to
claimant Judith Grauel. For the reasons
adduced below, the judgment of the
court of common pleas is affirmed.

I

A review of the record reveals the
following relevant facts. Claimant,
Judith Grauel, graduated from the
Cuyahoga Community College of Nurs-
ing in June 1982. Upon leaving school,
Grauel was employed as a registered
nurse ("RN") at Sunny Acres, an ex-
tended-care nursing home facility, for
about a year. Grauel left Sunny Acres to
join Euclid Manor as an RN supervisor.
She switched jobs because the work
schedule was better at Euclid Manor.

When she was hired, the nursing ad-
ministrator, Ellen Pacholski, was aware
that Grauel had only one year's ex-
perience as a nurse, and absolutely no
supervisory experience. In fact, Grauel
was reluctant to take on the supervisory
position, but was assured by the ad-
ministrator that Euclid Manor would
train her. Grauel was placed on a sixty-
day probationary period and immediate-
ly entered an orientation program under
the direct supervision of Anne Bak.

Grauel's employment at Euclid
Manor lasted only four weeks. On Oc-
tober 13, 1983, after working only two
weeks, she was given a warning letter
listing various criticisms of her job per-
formance. On October 26, 1983, Pachol-
ski sent a letter to Grauel acknowledg-
ing some improvement, but not enough.
As a result, Grauel was terminated.

On or about October 27, 1983,
Grauel filed an application with OBES
for unemployment compensation ben-
efits. On November 25, 1983, the ad-
ministrator determined Grauel was en-
titled to benefits. Euclid Manor re-
quested reconsideration, and on Decem-
ber 22, 1983, the initial determination
was affirmed. Euclid Manor filed a time-
ly appeal to the OBES Board of Review.
A hearing was had before a board of
review referee on January 26, 1984 and

February 21, 1984. On March 8, 1984, the referee affirmed the administrator's decision. On April 30, 1984, leave to appeal further to the board of review was disallowed, and the referee's decision was affirmed.

On May 7, 1984, Euclid Manor instituted an appeal to the court of common pleas. On August 16, 1984, the trial court affirmed the order and award of the board of review.

Euclid Manor has filed a timely appeal from the trial court's judgment, raising the following two assignments of error:

"First assignment of error

"The trial court erred in affirming the decision of the Board of Review, which found that the claimant/appellee, Judith A. Grauel, was discharged without just cause in connection with her work, such that no disqualification for benefits should be imposed, because same is unlawful and unreasonable, was unlawfully arrived at, and constitutes an arbitrary and capricious act and an abuse of administrative discretion.

"Second assignment of error

"The trial court erred in affirming the decision of the Board of Review, which found that the claimant/appellee, Judith A. Grauel, was discharged without just cause in connection with her work, such that no disqualification for benefits should be imposed, because same is against the manifest weight of the evidence."

## II

In support of these assignments, the appellant raises three distinct arguments. First, the evidence does not support the board's conclusion that Grauel was terminated without just cause; second, it was prejudicial error not to admit into evidence affidavits of two Euclid Manor employees; and finally, that the referee's determination did not state the legal reasons for the decision, and such

an omission violates due process. For the purposes of clarity, each argument will be discussed separately.

A. The appellant contends that the evidence does not support OBES's determination that Grauel was terminated without just cause. We disagree.

The law prohibits a reviewing court from substituting its judgment for the board of review's on questions of fact or from independently interpreting the evidence. *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41 [23 O.O.3d 57]; *Kilgore* v. *Bd. of Review* (1965), 2 Ohio App. 2d 69 [31 O.O.2d 108]. As a result, the Ohio Supreme Court has concluded that "[t]he decision of purely factual questions is primarily within the province of the referee and the board of review." *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167]. Because the determination of whether a claimant was discharged for "just cause" is a question of fact, see *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10 [73 O.O.2d 8], the board's conclusion must remain undisturbed if reasonably supported by the evidence.

As just noted, the evidence in the case at bar must support the board of review's conclusion that the claimant was not discharged for "just cause." In *Sellers* v. *Bd. of Review* (1981), 1 Ohio App. 3d 161, the court in discussing "just cause" stated as follows:

"In order to have just cause for discharge, pursuant to R.C. 4141.29, there must be some *fault on the part of the employee involved,* in the absence of an overwhelming contractual provision. Such fault does not require misconduct, but, *nonetheless, fault must be a factor in the justification for discharge.*" (Emphasis added.) *Id.* at 164.

Therefore, the trial court's judgment will be affirmed if the evidence supports the claim that Grauel was terminated through no fault of her own.

A review of the record clearly supports such a claim. The record indicates that Euclid Manor hired Grauel for a supervisory nursing position despite the fact that she had only limited experience as a nurse and no supervisory experience. Euclid Manor had promised to provide the claimant with the training that she needed. The evidence indicates, however, that there was a personality conflict between Grauel and the person who was to teach her, Anne Bak, and thus adequate training was not forthcoming.

Despite undisputed evidence that the claimant was a hard worker, and trying to improve, Euclid Manor determined her work to be unsatisfactory. The evidence indicates that whatever problems Miss Grauel was having were attributable to her inexperience and lack of proper training by the appellant, neither of which were the fault of the claimant. In fact, the evidence shows that the claimant was put in an untenable position. She was inexperienced and yearning to learn, but found herself in a situation where she was at first criticized for asking too many questions, and then criticized for either not asking enough questions or for asking the wrong people.

Further, there is no evidence that the claimant deceived Euclid Manor regarding her abilities nor is there sufficient evidence that her performance was any worse than nurses with similarly limited experience. The appellant has simply maintained that her performance was not up to their standards. This alone is not sufficient to constitute termination with just cause in the case at bar.

In summary, the record indicates that Euclid Manor hired the claimant with the understanding that she would be trained. The claimant was ready and willing to be trained, but Euclid Manor was not willing to invest the time. As a result, Grauel was terminated. This court cannot say under these facts that the termination was with just cause. Accordingly, appellant's first argument is without merit.

B. The appellant contends that it was reversible error for the referee to exclude certain employee affidavits from evidence. This argument is also without merit.

R.C. 4141.28(J) provides in pertinent part:

"* * * [I]n the conduct of such hearing or any other hearing on appeal to the board which is provided in this section, the board and the referees shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure. The board and the referees shall take any steps in such hearings, consistent with the impartial discharge of their duties, which appear reasonable and necessary to ascertain the facts and determine whether the claimant is entitled to benefits under the law."

The Ohio Supreme Court has interpreted this to mean that the referee should take in account relevant evidence even though it would be inadmissible in a court of law. See *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41 [23 O.O.3d 57]. It seems, therefore, that the referee erred in not permitting the affidavits in question to be admitted into evidence.

However, after reviewing the affidavits in question, we hold that the error was harmless. The affidavits in question were from two employees of the appellant, and simply reinforced the evidence at the hearing which established the fact that the claimant could not perform her duties. As noted earlier, the evidence clearly supports the claim that Grauel had not been adequately trained. In light of the fact that the referee's error was harmless, the second argument is without merit.

C. The appellant contends that the referee did not state the legal reasons for the decision and such an omission

violates due process. This argument is without merit.

This argument lacks merit because the referee did in fact state his reasons for the decision. The referee clearly stated that the claimant was discharged without just cause. Further, the referee indicated that termination based solely on inexperience is not just cause. Such an explanation is sufficient. Accordingly, appellant's third argument is without merit.

*Judgment affirmed.*

PATTON, J., concurs.

MARKUS, J., dissents.

MARKUS, J., dissenting. In its brief and oral argument, the Attorney General's office contends that an employee's inability to perform assigned duties cannot constitute just cause for discharge. They assert that there is no just cause for discharge for unemployment compensation purposes if the employee conscientiously tried to do the assigned duties.

The referee's report and the trial court's opinion reflect their acceptance and application of that purported legal rule, which I find wholly inappropriate. Further, the two nurses' affidavits corroborate the employer's claims and provide expert opinions about this employee's alleged incompetence, so their exclusion was not harmless error. Therefore, I respectfully dissent. I would remand this case for the agency's reconsideration with the correct rule of law and the totality of the evidence submitted.

I

The employer produced three witnesses and affidavits from two others at the referee's hearing. The nursing home's assistant administrator testified that the home discharged the claimant "[f]or unsatisfactory work performance during her probationary period." This witness had no personal knowledge about the claimant's performance of assigned duties. He presented a warning letter submitted to her seventeen days after she was hired and a termination letter delivered to her thirteen days later.

These letters detailed an alleged "lack of basic nursing knowledge" concerning treatments, procedures, medications, laboratory reports, medical charts, and relations with other health care personnel. The warning letter advised that she would be terminated if she did not show significant improvement within the next seven days. The termination notice stated that she had not shown satisfactory improvement within the thirteen days following the warning letter.

The nursing home's nursing services administrator testified that she hired the claimant, observed some of her performance, and received complaints about her work. She itemized specific instances when the claimant failed to perform assigned duties or failed to perform them properly. The witness expressed her expert opinion as a highly experienced nursing supervisor that a licensed nurse with the claimant's experience should have accomplished those tasks. Ordinarily, the nursing home allowed new nurses fourteen days as an orientation period. The home allowed the claimant more than double that time, but she was unable to perform acceptably. The nursing home's counsel proffered the witness's testimony that the claimant's actions were potentially life-threatening to the patients after the referee excluded that evidence.

The claimant's immediate supervisor recounted her own extensive experience as a licensed nurse at several area hospitals. This witness had extensive direct observations of the claim-

ant's performance at the nursing home. She testified about the claimant's numerous specific errors and omissions and their significance to patient care. She expressed her opinion that some of these actions "could cost the life of a patient." For example, she testified that the claimant failed to respond to her page "at least 50 percent of the time." She concluded that the claimant did not "discharge her duties * * * in a manner consistent with the minimum standards of a registered nurse with the equivalent training and experience that she possessed."

The employer's counsel then offered affidavits from two nurses who worked directly with the claimant at the nursing home. Each of these witnesses had extensive experience as a licensed nurse. The employer's counsel explained why he did not call them as live witnesses: "[W]e couldn't denude the nursing home of it's [sic] entire staff for this hearing." The referee excluded the affidavits "because apparently they [the witnesses] are residents of this county."

The proffered affidavits each describe the witness's personal observations of the claimant's nursing services. The first affidavit gave specific instances when the claimant "failed to possess and apply * * * basic nursing skills." It said: "The aforestated lack of nursing knowledge, skill and judgment * * * was potentially dangerous to those patients * * * placed under her care during employment." This affidavit stated that the claimant's "conduct in the discharge of her duties as a registered nurse * * * fell below the minimum standard of conduct for a registered nurse of equivalent experience."

The second affidavit also detailed occasions when the claimant failed to "possess and apply * * * basic nursing skills in the discharge of her duties as a registered nurse." The witness concluded that the claimant's "conduct in the discharge of her duties as a

registered nurse * * * fell below the minimum standard of conduct for registered nurses at similar facilities."

The claimant's counsel cross-examined the employer's witnesses and called the claimant as the sole witness on her own behalf. The claimant denied or could not recall many of the alleged errors and omissions which her supervisors described. She claimed that her immediate supervisor had a personal antagonism toward her which caused the supervisor to lie about her performance. She attributed that antagonism to the supervisor's annoyance with her lack of experience and her frequent questions. The claimant acknowledged that the nursing home hired her on a sixty-day probationary basis. She agreed that the nursing home gave her a warning letter after seventeen days, and discharged her after thirty days.

## II

The referee found that the nursing home discharged the claimant without just cause, so she was entitled to unemployment compensation benefits chargeable to this employer's premiums. In so ruling, the referee summarized what he considered to be the salient facts:

"The claimant performed her assigned duties as a Registered Nurse Supervisor to the best of her ability at Euclid Manor Nursing Home but because of lack of experience and training in this line of work, she was unable to perform them to the satisfaction of her employer. * * *

"* * *

"The claimant was discharged by Euclid Manor Nursing Home because of her inability to perform her assigned work to the satisfaction of her employer. No evidence has been introduced by the claimant's employer to establish that she carelessly, negligently, or willfully engaged in conduct which was detrimental to her employer's best interests. The

claimant did not knowingly violate any of her employer's work rules. *Inability to perform assigned work to an employer's satisfaction because of lack of experience and ability in that line of work is not considered just cause for discharge under the Ohio Unemployment Compensation Law.*" (Emphasis added.)

In affirming that decision, the common pleas judge's opinion repeated that analysis:

"Thus, where an employee fails to perform to an employer's satisfaction during a probationary period, the burden must be on the employer to show an intentional violation of the employer's rules or negligence that results in injury to the employer.

"*Any failure to meet minimal standards for an RN which injured a patient would be negligence or malpractice upon the patient. But negligence to the patient is not the same as negligence to the employer for the purpose of unemployment compensation benefits. Claimant's duty of care to the employer was to make her best efforts. Her duty of care to the patient was to meet the minimal standard of performance for an RN.*

"* * *

"Although there may be no question that the employer was justified in terminating the claimant's employment for business reasons and to assure proper patient care, those reasons do not constitute 'just cause' for the purpose of denying unemployment compensation benefits to an otherwise qualified applicant." (Emphasis added.)

The Attorney General's office and the claimant cite no authority which supports these supposed legal principles, and I can find none. They refer to *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10 [73 O.O. 2d 8], and *Sellers* v. *Bd. of Review* (1981), 1 Ohio App. 3d 161, but neither case provides that rule. In *Peyton,* the court reversed the agency's finding that an employee quit without just cause, when the employee "could not make a living doing" his newly acquired employment. In so ruling, the *Peyton* court suggested the following standard to determine "just cause" (44 Ohio App. 2d at 12):

"There is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act."

In *Sellers,* the same court applied the same standard to decide whether a state governmental employer had discharged a probationary employee for just cause. This time the court reversed the agency's finding that the employer acted with just cause because the employee was excessively absent. The court noted that those absences were "legitimate and approved" and resulted from the employee's family crises or personal ill-health. The *Sellers* opinion at 164 then discusses the meaning of "just cause":

"Appellees [the agency and the employer] apparently contend that misconduct by an employee is not a condition to constitute good cause. There is a distinct difference between unsatisfactory performance under R.C. 124.27 and just cause for discharge pursuant to R.C. 4141.29. Justification for a decision not to retain a probationary employee pursuant to R.C. 124.27 does not ipso facto constitute just cause for discharge under R.C. 4141.29. In order to have just cause for discharge, pursuant to R.C. 4141.29, there must be some fault on the part of the employee involved, in the absence of an overwhelming contractual provision. Such fault does not require misconduct; but, nonetheless, fault must be a factor in the justification for discharge. Otherwise, an employee who finds employment for which he is not suited, or fully qualified, would be

discharged for just cause, contrary to the *Peyton* case, noted above."

I believe that the Attorney General's office and the claimant misread these cases and their statutory foundation. Both the employer and the employee accept responsibilities when they agree on employment for a reasonable probationary interval. The employer undertakes an obligation for unemployment compensation premiums which result from a discharge where the employee fails to meet the employer's special requirements. In that situation, the employer's business judgment may dictate the employee's discharge, but the employee has acted without fault.

An employee who accepts a probationary position implicitly represents that he or she can perform to the minimum standards for that trade or profession. That employee accepts responsibility for his or her own discharge when it results from an incapacity to perform at that level. State licensing for the occupation involved is some evidence that the employee will satisfy that basic standard, but it is certainly not conclusive. If the employee fails to perform at the customary minimum standards for that occupation, the employee is "at fault." In that situation, the employer has just cause to discharge the employee without suffering any adverse effect on unemployment compensation premiums.

A contrary rule imposes an unreasonable hardship on the employer, particularly when the employment involves professional services with potentially grave consequences. If this employer retains a nurse whose services fall below minimum accepted standards, it faces serious risks. Those potential consequences can include liability for injury or death to its patients, fines for violating state administrative regulations, and license revocation. See R.C. 3721.03, 3721.05(B), 3721.05(E), 3721.07(B), 3721.07(E), 3721.99; Ohio Adm. Code Chapter 3701-17.

Indeed, the employer has just cause to discharge an established employee who significantly fails to meet minimum standards for that occupation after any probationary period. Cf. 9 Unemp. Ins. Rep. (CCH)(1955), Paragraph 1970.55 (collecting five Ohio trial court cases holding that the employer had just cause to discharge an employee for unreasonable work performance).

This court should not substitute its judgment for the agency's decision about disputed factual issues. However, we should reject an agency decision based on an improper rule of law. In this case, the agency has misconstrued the statutory term "just cause," so we should remand the case for consideration with the correct rule.

### III

The referee had discretion to receive evidence which would have been inadmissible in a court proceeding. R.C. 4141.28(J). He was not obliged to accept as evidence every unsubstantiated rumor or every unauthenticated statement. *Harshaw Chemical Co.* v. *Bd. of Review* (May 23, 1985), Cuyahoga App. No. 49025, unreported. If he does accept evidence which would not be admissible in court, he must weigh it and give it consideration when making a decision. *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41, 43-44 [23 O.O.3d 57].

In this case, the referee abused his discretion by refusing to accept and consider sworn affidavits from key witnesses about clearly relevant matters. There was no dispute that the affidavits were authentic. The referee's explanation that the witnesses resided within the county where he conducted the hearing did not justify his exclusion of their affidavits. The referee could have granted the claimant a continuance to subpoena those witnesses, if she felt

that the affidavits were unreliable. The statutory procedure presumes that less formal evidence can be used to reduce the expense or hardship that may be involved in producing live witnesses.

The exclusion of these affidavits was not harmless error. The factual issues were hotly contested. We cannot conclude that the referee would probably have reached the same result, if he had considered this additional evidence. First, these apparently impartial witnesses strongly supported the employer's version of the claimant's work performance. The claimant denied those circumstances and asserted that her immediate supervisor fabricated them for personal reasons. The supervisor denied any antagonism toward the claimant. The affidavits corroborate the supervisor's testimony and may thereby discredit the argument that the supervisor testified falsely for spite.

Additionally, the affidavits provide expert opinion evidence about the claimant's alleged non-compliance with minimum standards for registered nurses. Such evidence is ordinarily not cumulative, and its exclusion is ordinarily not harmless. Cf. *Fowler* v. *Young* (1945), 77 Ohio App. 20 [32 O.O. 298]. Even if the agency had used the correct legal rules in reaching its decision, it failed to consider important evidence. Therefore, I would remand for reconsideration with all the proper evidence.