OPINION
{¶ 1} Appellants Garry E. Clark and the Director of the Ohio Department of Job and Family Services appeal the April 6, 2005 judgment of the Franklin County Court of Common Pleas that reversed an order of the Unemployment Compensation Review Commission ("review commission"). The review commission found that appellant Garry Clark ("Clark") was terminated from his employment without just cause and entitled to unemployment compensation benefits. The court held that the review commission's determination was unreasonable and against the manifest weight of the evidence.
 {¶ 2} As a preliminary matter, the court will address a motion to strike filed by appellee, the City of Dublin ("City"). The City moves to strike the reply brief filed on behalf of the Director of the Ohio Department of Job and Family Services arguing that it grossly mischaracterizes the City's argument. No appellate rule specifically governs motions to strike. However, Civ.R. 12(F) authorizes a court to strike "any redundant, immaterial, impertinent or scandalous matter."
 {¶ 3} We find that the department's reply brief does not warrant censure under any of these grounds. Moreover, it is the court's province to weigh and determine the relevance and persuasiveness of arguments in appellate briefs. The City's motion is overruled.
 {¶ 4} Clark began working for the Engineering Department of the City in September 1979. For the next 24 years, he held various positions, ultimately working as an engineering assistant until his termination on August 22, 2003. As the only engineering assistant, Clark's duties consisted of reviewing residential plot plans submitted to the City. Residential plot plans are site plans for new homes that must be submitted and approved before construction can begin.[1] Clark's responsibilities involved reviewing the plot plans to ensure specific items were included and completing the checklist of those requirements, such as a compass indicating "North," the location of sewer lines, and the attachment of necessary papers. Clark was also asked to answer walk-in questions and phone inquiries.
 {¶ 5} In January 2000, Paul Hammersmith ("Hammersmith") became Clark's supervisor. As Clark's supervisor, Hammersmith conducted yearly performance evaluations. Clark received an overall rating of 4.00, or "effective" in his 2000 evaluation. However, beginning in early 2001, Clark's evaluations began to decline while criticism of his work began to increase.[2]
 {¶ 6} On April 19, 2001, Hammersmith met with Clark to discuss Clark's productivity. Hammersmith advised Clark that the time he took to review plans exceeded the policy standard of 14 days. Clark's average review time was 28 days, which Hammersmith felt was unacceptable.
 {¶ 7} After discussion, Hammersmith and Clark arrived at new performance guidelines. Hammersmith suggested setting the standard at five to six reviews per day. However, Clark objected to the suggestion, saying that five to six per workday was too many. As a compromise, Clark was expected to complete an average of four to five plot plan reviews per day, for a total of 20 to 25 reviews per week. Clark agreed that this new productivity goal was reasonable. Hammersmith confirmed their conversation in a memorandum dated the same day, as well as in letters dated May 17, 2001 and May 21, 2001.
 {¶ 8} Clark consistently failed to meet these productivity standards and, on December 11, 2001, the City took formal disciplinary action and issued a written reprimand. In the reprimand, Hammersmith informed Clark that his average review rates in October and November were 2.4 and 1.8 plot plans per day, respectively, far below the agreed quota of 4 to 5 reviews per day. Clark's declining productively was also noted in both his 2001 and 2002 performance evaluations, in which he received ratings of 2.43 (between "marginal" and "effective") and 1.63 ("unsatisfactory"), respectively.
 {¶ 9} On July 22, 2003, Clark received his second formal reprimand. This reprimand took place after a pre-disciplinary conference during which Hammersmith and Clark discussed Clark's failure to meet productivity standards from June 24, 2002 through December 31, 2002. Clark was given a three-day suspension without pay, effective August 19, 2003.
 {¶ 10} On August 22, 2003, Hammersmith called Clark in for a second pre-disciplinary conference. During the meeting, Hammersmith again discussed Clark's failure to meet the production quota for the period of August 4, 2003 through August 15, 2003. A memorandum commemorating the conference was issued the same day. Hammersmith concluded that there was just cause to terminate Clark's employment, and Clark was terminated effective August 22, 2003.
 {¶ 11} Clark filed an application for determination of benefit rights seeking unemployment benefits beginning August 24, 2003. On September 12, 2003, the department issued a Determination of Benefits ("determination"). The department held that Clark was discharged without just cause in connection with work and his application for unemployment compensation was allowed.
 {¶ 12} The City appealed the determination on October 2, 2003. The department affirmed Clark's eligibility for unemployment compensation on October 17, 2003. On November 7, 2003, the City filed an appeal of the redetermination and, on December 8, 2003, the department transferred jurisdiction to the review commission.
 {¶ 13} Two hearings were held before a hearing officer: the first on January 30, 2004, and the second on February 23, 2004. The hearing officer affirmed the redetermination in a decision mailed March 8, 2004. In that decision, the hearing officer reasoned as follows:
The facts show that [Clark] was terminated for not meeting the employer's quotas regarding plot plan reviews. [Clark] has provided reasonable explanations for not being able to always meet the quota of the employer. [Clark] was often involved handling [sic] other work duties which required his attention during a typical work day. [Clark] has even provided evidence that he had a better review time than other divisions regarding reviews. There is insufficient evidence to show that [Clark] was guilty of gross negligence or misconduct in connection with work, which would justify his discharge. Therefore, it must be found that [Clark] was discharged without just cause in connection with work. There is no disqualification of benefit rights due to this reason for separation.
On March 29, 2004, the City requested review of the hearing officer's decision.
 {¶ 14} On July 20, 2004, a hearing was held before a second hearing officer on behalf of the review commission. As he had done in the first two hearings, Clark appeared in person represented by counsel. The City presented the testimony of Clark's supervisor, Hammersmith. The review commission also considered the record of proceedings before the hearing officer.
 {¶ 15} On July 29, 2004, the review commission upheld the decision of the hearing officer. The commission reasoned that Clark was discharged solely because of his lack of productivity, i.e., his failure to meet the standards assigned by Mr. Hammersmith. The commission concluded that had "Clark met the standards set forth by Mr. Hammersmith and * * * work[ed] a reasonable amount of time, he would have run out of residential plan reviews." Further, statistics showed that [Clark] "was producing work at least as fast as the other two departments associated with the plan review process." The review commission found that Clark's productivity was not poor enough to warrant termination from employment. Therefore, the commission upheld Clark's right to unemployment compensation benefits.
 {¶ 16} The City appealed the decision of the review commission to the Franklin County Court of Common Pleas pursuant to R.C. 4141.282. The trial court recognized that the determination of the commission must be affirmed unless it was unlawful, unreasonable or against the manifest weight of the evidence. R.C. 4141.282(H). The court additionally noted that an employer may require specific standards of conduct and may discharge employees who violate those standards. Piazza v. Ohio Bur. ofEmp. Serv. (1991), 72 Ohio App.3d 353, 357. The court reviewed the record and concluded that the manifest weight of the evidence demonstrated that Clark violated minimum standards of productivity set by the City, which followed a progressive discipline policy and ultimately terminated his employment. The court held that Clark was discharged for just cause and was ineligible for unemployment benefits.
 {¶ 17} Clark and the Director of the Ohio Department of Job and Family Services (collectively, "appellants") now appeal the trial court's decision, raising separate assignments of error. The Director asserts a single assignment of error:
THE COMMON PLEAS COURT ERRED IN FINDING THAT THE DECISION OF THE OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION WAS UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN THE EVIDENCE SUPPORTS THE CONCLUSION THAT CLARK HAD BEEN DISCHARGED FROM HIS EMPLOYMENT AT THE CITY OF DUBLIN WITHOUT JUST CAUSE IN CONNECTION WITH WORK.
 {¶ 18} Clark, too, sets forth a single assignment of error:
THE COURT OF COMMON PLEAS ERRED IN REVERSING
THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION, WHICH HAD GRANTED UNEMPLOYMENT BENEFITS TO APPELLANT GARRY CLARK.
 {¶ 19} Though separate, both assignments of error challenge the trial court's finding that the decision of the review commission was against the manifest weight of the evidence. Accordingly, the assignments of error will be addressed as one.
 {¶ 20} We review the trial court's decision under the same standard applied below. Whether at the common pleas or appellate level, a reviewing court may reverse the decision only if it is unlawful, unreasonable or against the manifest weight of the evidence. R.C. 4141.282(H); Tzangas,Plakas Mannos v. Admr., Ohio Bur. of Emp. Servs. (1995),73 Ohio St.3d 694, 696, citing Irvine v. Unemp. Comp. Bd. of Review
(1985), 19 Ohio St.3d 15, 17-18. Appellate courts are not permitted to make factual findings or to determine the credibility of witnesses. Our duty is limited to determining whether the evidence in the record supports the hearing officer's determination and whether that determination applies the correct legal standard. Id.
 {¶ 21} A reviewing court may not substitute its own judgment for that of the review commission. If the review commission reasonably could have drawn conclusions in favor of either party, we have no authority to reverse the decision. Irvine, supra, at 18. "[T]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." Id.
 {¶ 22} The review commission's final decision may not be reversed as against the manifest weight of the evidence if it is supported by evidence in the record. Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Reversal of a decision as being against the manifest weight of the evidence should be reserved for only the most "exceptional circumstances, when `the evidence weighs heavily against the [judgment].'" Harwell v. Grafton Corr. Inst.,
Franklin App. No. 04AP-1020, 2005-Ohio-1544, at ¶ 9, quoting State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 23} To be eligible for unemployment compensation benefits, a claimant must meet the statutory requirements set forth in R.C. 4141.29. To award Clark unemployment compensation, the administrator had to find that Clark was fired without just cause. R.C. 4141.29(D)(2)(a). Because R.C. Chapter 4141 does not define "just cause," courts look to the term's definition in a broader statutory sense. Regarding unemployment compensation determinations, case law has consistently defined "just cause" as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine,
supra, at 17.
 {¶ 24} A determination of just cause is necessarily a factual inquiry, one which must be made in light of the legislative purpose underlying unemployment compensation: to provide financial assistance to individuals who are involuntarily unemployed. Harrison v. Penn TrafficCo., Franklin App. No. 04AP-728, 2005-Ohio-638, at ¶ 4. The purpose of unemployment compensation is not to protect employees from their own poor decisions, but to protect them from forces over which they have no control. Tzangas, supra, at 697. The Ohio Supreme Court has noted that, when the employee is at fault, he or she no longer warrants protection under the unemployment compensation act. Whether or not the employee is at fault is an essential component of a just cause termination. Id., paragraph two of the syllabus. To find just cause for discharging an employee, pursuant to R.C. 4141.29, some fault on the part of the employee, which leads to his termination, must be found. Sellers v. Bd.of Review (1981), 1 Ohio App.3d 161, paragraph two of the syllabus.
 {¶ 25} An employee's unsuitability for his required work or position is one manifestation of "fault" that can support a just cause termination:
An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change substantially since the date of the original hiring for that particular position.
Tzangas, paragraph four of the syllabus. The Tzangas court further noted that, whether the employee cannot or will not perform the job correctly is unimportant because in either case, the employee's performance is deficient. Id., at 698. "Fault" does not require malicious purpose or willful misconduct. Crisp v. Scioto Residential Services,Inc., Scioto App. No. 03CA2918, 2004-Ohio-6349, at ¶ 22; Sellers,
supra, at 162-163. Rather, it signifies a deficiency — which is not a result of any broader, external force — that makes the employee unsuitable for a given position and ultimately constitutes fault on the part of the employee. Tzangas, at 698.
 {¶ 26} Here, there is no indication that either the hearing officer or the review commission examined the issue of fault. Instead, both found that Clark was terminated for not meeting the City's production goals for residential plot plan reviews, but that Clark provided reasonable explanations for not always meeting the established production quota. Whether or not an employee provides logical excuses for not satisfying an employer's reasonable standards is irrelevant to an inquiry regarding that employee's eligibility for unemployment compensation. Thus, the hearing officer's decision, as affirmed by the review commission, does not comport with the legal standards set forth in Tzangas.
 {¶ 27} The trial court was the first to address the issue of fault and whether the acts demonstrated fault in Clark's case. Based on the record, the court found that the decision of the review commission was unreasonable and against the manifest weight of the evidence. The trial court found that Clark's failure to meet his employer's standards amounted to fault as that term is understood in a just cause determination. The court reasoned that, under the Tzangas analysis, Clark became unsuitable for his position due to his inability to meet reasonable productivity standards presented and explained to him by his supervisor.
 {¶ 28} Under Tzangas, Clark was unsuitable for his position. He could not or would not meet reasonable standards of productivity; standards he was aware of and agreed were reasonable. While production goals did not exist at the time he was hired, some 22 years prior, it is unrealistic to expect that the requirements of an employee's job position will remain static over an extended period of time. Clark's position changed during his tenure with the City. Over time, the City received more residential plot plans, which made some change in production expectations unavoidable. The primary issue for courts to consider is whether the employer made known its expectations at the time of a change of circumstance — whether at hiring, promotion, or re-evaluation — and whether the employee was fully aware of those expectations. See CaseWestern Reserve Univ. v. Admr., Ohio Bur. of Empl. Serv. (June 1, 2000), Cuyahoga App. No. 76318 (finding that the employer made its expectations known at the time of the employee's promotion).
 {¶ 29} Once they were created, Clark's production expectations did not change. Clark had informed Hammersmith that he anticipated there would be days or weeks in which he would not be able to meet the goal of four to five plot plan reviews due to job-related distractions. Hammersmith advised Clark to tell him if other matters in the engineering office distracted him from his job duties. Clark never notified Hammersmith that he could not perform as expected.
 {¶ 30} It is clear that Clark was aware of the City's productivity expectations. Clark helped devise the standards. He was given several written and verbal warnings that he was falling short in job productivity, and Hammersmith had several counseling discussions with Clark about his work. In fact, it was during one of these discussions that Hammersmith — with input from Clark — created the production quota. Further, Clark testified that he was aware of the productivity goals.
 {¶ 31} The final inquiry is whether or not the expectations were reasonable. The decisions of the hearing officer and review commission can be read to imply that the productivity goal failed this test. The hearing officer found that Clark provided reasonable explanations for not being able to perform adequately, which could be interpreted to indicate that the goal was unreasonable. However, whether Clark provided reasonable explanations is not relevant. Under Tzangas, the question is simply whether or not the expectations of productivity were reasonable. In his testimony, Clark agreed that the productivity standards were reasonable. Where reasonable work expectations are not met, the employee is unsuitable for the required work and may be terminated for cause. Id.
 {¶ 32} Appellants submit that the trial court exceeded the scope of its limited review. We disagree. In an appeal from the review commission, the common pleas court must determine if the evidence supports the order of the agency and whether that order conforms to the law. The court did not inappropriately reweigh the evidence. Indeed, the factual findings of the hearing officer and the review commission are not challenged. However, those factual findings do not support the legal conclusions of the hearing officer and the review commission.
 {¶ 33} An inquiry into fault, that is, whether Clark's performance, or lack thereof, was attributable to him or to outside forces, was a necessary component of review by the commission and by the court. The hearing officer and review commission omitted this critical inquiry. When the proper legal standard is applied, the finding that Clark was discharged without just cause is against the manifest weight of the evidence. We find that the trial court did not exceed its bounds.
 {¶ 34} Based on the foregoing, we overrule appellants' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE, J., BRYANT, J., dissents.
[1] The City's building and zoning departments also must approve plot plans prior to construction.
[2] In 1991, Clark was involved in an automobile accident resulting in soft tissue injury and nerve damage. In 1998, Clark requested paid medical leave due to fibromyalgia, a medical condition stemming from those injuries. The City contested the request, and Clark instituted a disability discrimination case against the City. In 2001, summary judgment was granted in the City's favor. Clark continues to argue that the increased criticism and declining performance evaluations were in retaliation to his lawsuit. However, Hammersmith testified, and the review commission specifically found, that Clark's termination was for poor productivity. Clark failed to object to that finding or raise the issue in his assignment of error. Therefore, we do not address Clark's retaliation theories.