[Cite as *Farrar v. Univ. Hosp. Health Sys., Inc.*, 2024-Ohio-5374.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

ERIN FARRAR,

　　　　　Appellant,

　　- vs -

UNIVERSITY HOSPITALS HEALTH
SYSTEM, INC., et al.,

　　　　　Appellees.

CASE NO. 2024-L-028

Administrative Appeal from the
Court of Common Pleas

Trial Court No. 2023 CV 000788

## O P I N I O N

Decided: November 12, 2024
Judgment: Affirmed

*Lester S. Potash*, 25700 Science Park Drive, Suite 160, Beachwood, OH 44122 (For
Appellant).

*David A. Campbell* and *Donald G. Slezak*, Gordon Rees Scully Mansukhani, LLP, 600
Superior Avenue, E., Fifth Third Building, Suite 1300, Cleveland, OH 44114 (For
Appellee, University Hospitals Health System, Inc.).

*Dave Yost*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor,
Columbus, OH 43215, and *Patrick MacQueeney*, Assistant Attorney General, 615 West
Superior Avenue, 11th Floor, Cleveland, OH 44113 (For Appellee, Matt Damschroder,
Director, Department of Job and Family Services).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Erin Farrar, appeals the judgment affirming the decision of the
Ohio Unemployment Compensation Review Commission disallowing Farrar's claim for
unemployment compensation benefits. We affirm.

{¶2} In 2014, Lake Health Hospital hired Farrar as a coding specialist. In 2021, appellee University Hospitals Health Systems, Inc. ("University Hospitals") acquired Lake Health Hospital. On January 1, 2022, University Hospitals notified its coding specialists that, as a condition of employment, they were required to acquire a medical coding certification within six months. Farrar did not possess a medical coding certification, nor did she obtain a certification after extensions of the six-month deadline.

{¶3} On December 1, 2022, University Hospitals terminated Farrar's employment. Farrar then filed a claim for unemployment compensation benefits, which appellee Ohio Department of Job and Family Services ("ODJFS") disallowed, finding that Farrar was discharged from employment with just cause pursuant to R.C. 4141.29(D)(2)(a). Following Farrar's request for redetermination, ODJFS affirmed its determination disallowing benefits. Farrar appealed the redetermination, and the case was then transferred to the Ohio Unemployment Compensation Review Commission (the "review commission") pursuant to R.C. 4141.281.

{¶4} On April 11, 2023, a telephonic hearing took place before a review commission hearing officer, who heard testimony from Farrar and Curtis Lane, a human resources business partner employed by University Hospitals. Lane testified that Farrar began employment as a coding specialist on June 15, 2014, and University Hospitals discharged her on December 1, 2022. Lane maintained that, effective December 31, 2021, University Hospitals "changed" the job description for coding specialists to require a coding certificate be obtained prior to June 30, 2022. University Hospitals informed the employees of this requirement on January 1, 2022, and explained that if the employees failed to obtain the certification prior to the deadline, they could be terminated. Lane

2

explained that the certification for medical coding involved a test that could be taken and retaken, and believed a test was offered at least every two weeks. He further indicated that University Hospitals reimbursed employees for classes, textbooks, and the exam if it was passed, and it offered study materials at cost. However, Farrar failed to obtain the certification by the June deadline. After extensions of the deadline, Farrar still had not obtained the certification, and University Hospitals then discharged her for that reason.

{¶5} Farrar did not dispute Lane's testimony, but she maintained that she was not aware that University Hospitals would reimburse her for the test and associated materials. Farrar indicated that, although she was aware that she was required to take and pass a certification test prior to the June deadline, she did not first attempt to take a test until June, which she did not pass. She indicated that she had waited to take the test due to financial constraints and personal time commitments. In addition, Farrar indicated that she was not aware of the different test options. After receiving the last extension of the deadline, in November, Farrar retook the test she had originally failed, and then she took a different coding test a few days thereafter. However, she did not pass either test taken in November. Farrar acknowledged that she was aware that she could be discharged for failing to obtain a coding certification, but she believed that termination was improper because she was close to passing the tests, and she was actively attempting to pass a certification test at the time of discharge.

{¶6} Following consideration of the testimony, the hearing officer issued a decision affirming the ODJFS' determination, finding that Farrar was discharged with just cause for failing to meet a condition of continuing employment. In the findings of fact, the hearing officer determined:

3

Case No. 2024-L-028

Claimant, Erin Farrar, worked as HIS Coding Specialist for University Hospitals Health System, Inc. from June 15, 2014 until December 1, 2022. Claimant was discharged for allegedly failing to secure her coding certification as required.

On January 1, 2022, University Hospitals Health System, Inc. notified coding specialists that, by June 30, 2022, they were being required to take and pass a coding specialist exam, in order to meet new certification requirements. They were notified that this was a new condition of continuing employment.

Claimant did not meet the June 30, 2022 deadline due to personal and financial reasons. The deadline was extended through November 30, 2022. Although claimant took the exam numerous times, she was unable to pass the exam by November 30, 2022. On December 1, 2022, claimant was discharged.

{¶7} The hearing officer then reasoned that Farrar's failure to obtain the coding certification requirement was sufficient fault on her behalf to establish just cause for her discharge from employment. Accordingly, the hearing officer affirmed the ODJFS' redetermination disallowing Farrar unemployment compensation benefits.

{¶8} Farrar requested review of the hearing officer's determination, which the review commission allowed. Thereafter, the review commission affirmed the hearing officer's decision.

{¶9} On June 22, 2023, Farrar appealed the review commission's decision to the Lake County Court of Common Pleas pursuant to R.C. 4141.282. Farrar argued that she satisfied the expectations of employment communicated to her when she was hired in 2014. She maintained that University Hospitals lacked just cause to discharge her based on a subsequent alteration of the requirements of her job, which she did not satisfy.

4

Case No. 2024-L-028

{¶10} Following briefing, the common pleas court affirmed the decision of the review commission. Farrar now appeals the decision of the common pleas court, arguing, in her sole assigned error:

{¶11} "The trial court committed prejudicial error in affirming the final decision denying Erin Farrar's unemployment compensation claim."

{¶12} The review commission's determination of whether a claimant was discharged with just cause is appealable to the court of common pleas, which may review the determination under the following standard: "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." R.C. 4141.282(H). The same "limited standard of review applies to all appellate courts." *Williams v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-2897, ¶ 20, citing *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985). "Thus, a reviewing court may not make factual findings or determine a witness's credibility" and must affirm the commission's findings when supported by the manifest weight of the evidence. *Williams* at ¶ 20, citing *Irvine* at 18. "In other words, a reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach different conclusions.'" *Williams* at ¶ 20, quoting *Irvine* at 18.

{¶13} To receive unemployment compensation benefits, a claimant must satisfy the requirements of R.C. 4141.29(D)(2)(a), which provides that "no individual may . . . be paid benefits . . . [f]or the duration of the individual's unemployment if the director [of OJDFS] finds that . . . [t]he individual quit work without just cause or has been discharged

5

for just cause in connection with the individual's work, . . . ." *See also Williams* at ¶ 14-18. "R.C. 4141.46 provides that R.C. 4141.01 through 4141.46 is to be liberally construed." *Williams* at ¶ 19.

{¶14} "Just cause" within the meaning of R.C. 4141.29(D)(2)(a) ""'is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'"" *Williams* at ¶ 22, quoting *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist. 1975). "The determination whether there is just cause for discharge depends upon the factual circumstances of each case." *Williams* at ¶ 22, citing *Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 207 (1991). "'[W]hat constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is "to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day."'" (Emphasis in original.) *Williams* at ¶ 22, quoting *Irvine* at 17, quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223 (1964).

{¶15} Accordingly, although an employee's behavior need not amount to misconduct, the employee must have borne some fault to establish "just cause" for a discharge for purposes of unemployment compensation. *Quartz Sci., Inc. v. Ohio Bur. of Unemp. Comp.*, 2013-Ohio-1100, ¶ 15 (11th Dist.); *Sellers v. Bd. of Rev.*, 1 Ohio App.3d 161, 164 (10th Dist. 1981). Fault has been recognized in a variety of situations, including "willful or heedless disregard of a duty, a violation of an employer's instructions, or

6

Case No. 2024-L-028

unsuitability for a position." *Moore v. Ohio Unemp. Comp. Rev. Comm.*, 2012-Ohio-1424, ¶ 21 (10th Dist.), citing *Williams*, 2011-Ohio-2897, at ¶ 24.

{¶16} Here, in their briefs, the parties focus extensively on the test for unsuitability stated by the Ohio Supreme Court in *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694 (1995), paragraph four of the syllabus. In *Tzangas*, the claimant was employed as a word processor. *Id.* at 694. However, the claimant's work failed to meet the employer's expectations, resulting in the claimant's discharge. *Id.* at 694-695. The claimant applied for unemployment compensation, and her claim was allowed and affirmed on appeal to the common pleas court. *Id.* at 695. On appeal to the Sixth District, the court reversed the decision of the lower court. *Id.* On certification of a conflict to the Ohio Supreme Court, the Court held:

> An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change substantially since the date of the original hiring for that particular position.

*Id.* at paragraph four of the syllabus. Applying this test to the facts at issue in that case, the Supreme Court determined that the claimant was "at fault" for her discharge for purposes of unemployment compensation, stating that, while her inability to meet her job expectations, "may not be her fault in a moral sense, it does constitute fault in a legal sense sufficient for her termination to have been made with just cause."

{¶17} Thereafter, in *Williams*, the Supreme Court cited the four-prong *Tzangas* test when addressing whether a claimant was at fault for her discharge when she failed to obtain a license as an independent social worker within fifteen months, which was an

7

Case No. 2024-L-028

express condition of a promotion that she had accepted. *Williams* at ¶ 3-5. The Court concluded that unemployment compensation was properly disallowed to the employee, holding:

> When employment is expressly conditioned upon obtaining or maintaining a license or certification and an employee agrees to the condition and is afforded a reasonable opportunity to obtain or maintain the license or certification, an employee's failure to comply with that condition is just cause for termination for unemployment compensation purposes.

*Id.* at syllabus.

{¶18} Here, Farrar maintains that the certification requirement was not a condition of employment when originally hired in 2014, and thus her termination was not for just cause under the standard for unsuitability announced in *Tzangas*. Appellees respond that when University Hospitals acquired Lake Health Hospital in 2021, Farrar was a new employee for purposes of the unsuitability test, and she acknowledged that University Hospitals required certification when it acquired Lake Health Hospital.

{¶19} These arguments pertain to just cause for discharge *solely on the basis of unsuitability*. For the reasons that follow, although we agree that the record does not support a finding of unsuitability under *Tzangas*, this is not dispositive of this appeal. As previously set forth, unsuitability under *Tzangas* is not the only basis for a finding that an employee is at fault, i.e., that there existed just cause, for discharge. The Supreme Court did not hold differently in *Williams*, when it applied the *Tzangas* unsuitability test. Instead, because the *Williams* claimant "accepted the promotion to program manager knowing that she was required to obtain the LISW certification within 15 months," the facts supported a finding of unsuitability, and it was unnecessary for the Court to determine if

8

just cause existed independent of the unsuitability test. *Williams*, 2011-Ohio-2897, at ¶ 24, 29.

{¶20} Here, in applying *Tzangas*, the parties dispute whether Farrar was notified of the coding certification as a condition of employment at the time of hiring. *See id.*, 73 Ohio St.3d 694, at paragraph four of the syllabus. The parties first disagree as to the date of hire for purposes of applying *Tzangas*. Farrar maintains that she was "hired" in 2014 by Lake Health Hospital. Appellees argue that Farrar was "hired" in 2021 when University Hospitals acquired Lake Health Hospital in May 2021.

{¶21} However, appellees have provided no authority standing for the proposition that a change in ownership of an employer necessarily results in a new "hire" of a retained employee for purposes of applying the *Tzangas* unsuitability test. Further, although appellees maintained at oral argument that the acquisition occurred in May 2021, the record does not appear to contain the date in 2021 that University Hospitals acquired Lake Health Hospital.

{¶22} Moreover, even if we were able to discern that University Hospitals acquired Lake Health Hospital in May 2021, and if we were to assume such an acquisition resulted in a new "hire" status for purposes of the unsuitability test, the record does not support that the coding position required a certification, much less that such a requirement was communicated to Farrar, at the time of acquisition. In ODJFS' answer brief, in support of its position that the coding certification requirement was communicated to Farrar at the time of acquisition, it cites to a "job description" that was included in the director's file. ODJFS maintains that this job description was provided to Farrar on May 17, 2021.

9

Case No. 2024-L-028

**{¶23}** However, the job description does not on its face reflect that it was provided to the employees or Farrar on May 17, 2021. Instead, the job description for the coding specialists is dated as "submitted" on "5.17.2021 rev. 12.10.2021." The description contains a section for "Required Credentials, Licenses, and / or Certifications," and states, "You may choose from a list of certifications currently used in Oracle here. Be sure to also add credentials and licensure if applicable." On the form, the word "here" is underlined and the font is lightened, apparently indicating a hyperlink. Thereafter, this section provides, "One of the following coding certifications required or must be obtained within 6 months of hire: CCA, CPC, CPC-A, COC, CPC-P, RCC. ROCC, RHIT, or RHIA."

**{¶24}** There is no dispute that the coding specialists, including Farrar, were originally provided until June 30, 2022, to obtain a coding certificate. Thus, it would follow that the job description's coding requirement was a revision to the job description six months prior, in December 2021.

**{¶25}** Moreover, the testimony provided by University Hospitals at the hearing before the review commission makes no indication that any coding certification requirement existed prior to December 2021. To the contrary, as summarized above, Lane testified for University Hospitals as follows:

> [HEARING OFFICER:] Was she discharged?
>
> [LANE:] Yes.
>
> [HEARING OFFICER:] What was she discharged for?
>
> [LANE:] The situation was the job description changed and required a coding certificate and there was a time frame provided and after two extensions of the, the deadline it was not, uh, collected or received by Erin. So we discharged on that.

10

Case No. 2024-L-028

[HEARING OFFICER:] Right. So, when did this requirement change?

[LANE:] The requirement changed effective December 31st, 2021, and was communicated to employees on January 1st of 2022 with a six-month deadline for June 30th, 2022, to earn the credential.

{¶26} Lane went on to reiterate that the communication of the certification requirement was made to the employees on January 1, 2022, and he confirmed that "this communication on January 1, 2022 is telling individuals in Ms. Farrar's position that there's this change in the description and you're going to need a coding certification[.]"

{¶27} Based on the testimony adduced at the hearing, the review commission determined that the certification requirement was communicated to Farrar on January 1, 2022.

{¶28} We recognize that on a questionnaire included in the record, Farrar indicated that "when" or "once" University Hospitals acquired Lake Health Hospital, University Hospitals required a coding certification. However, we do not read these responses as Farrar indicating that the coding certification requirement existed, and was communicated to employees, contemporaneously with the acquisition. Instead, Farrar indicated on the questionnaire that "we didn't know right away that we had to be certified with the transition of UH."

{¶29} Accordingly, we conclude appellees' argument that Farrar was notified upon "hiring" that her employment was conditioned on successfully obtaining a coding certification is unavailing. Whether we consider Farrar to have been hired in 2014, when she began her position with Lake Health Hospital, or in 2021, when University Hospitals acquired Lake Health Hospital, pursuant to the review commission's supported findings,

11

Case No. 2024-L-028

she was not informed of the certification requirement until January 1, 2022. Because she was not informed of the certification requirement at the time of hire, *unsuitability* would not serve as a basis for establishing just cause for discharge for failing to acquire the certification. *See Tzangas*, 73 Ohio St.3d 694, at paragraph two of the syllabus.

{¶30} However, again, unsuitability is only one of several bases of a finding of just cause for a discharge. *See Moore*, 2012-Ohio-1424, at ¶ 21 (10th Dist.), citing *Williams*, 2011-Ohio-2897, at ¶ 24; *see also McCarthy v. Connectronics Corp.*, 2009-Ohio-3392, ¶ 15 (6th Dist.) ("Unsuitability for a position constitutes fault by the employee, as *Tzangas* made clear, but unsuitability is not the only way of proving fault."). Thus, contrary to Farrar's position in her brief, it does not follow that, where the *Tzangas* test is unsatisfied, an employee is not at fault for the discharge for purposes of just cause. Instead, as previously addressed, whether just cause exists is dependent on the factual circumstances of the case, viewed in light of the purposes of the Unemployment Compensation Act. *Williams* at ¶ 22.

{¶31} Here, the review commission considered the particular facts of this case: on January 1, 2022, University Hospitals notified the coding specialists, including Farrar, of the requirement that they obtain coding certification within six months; Farrar failed to meet the deadline due to personal and financial reasons; University Hospitals provided extensions of the deadline, allowing her until November 30, 2022 to pass a certification examination; and Farrar failed to pass a certification examination prior to November 30, 2022. The review commission concluded that these facts demonstrated sufficient fault on behalf of Farrar to deem her discharged for just cause. Such a conclusion is consistent

12

with the underlying purposes of the Unemployment Act. As the Ohio Supreme Court has cautioned:

> The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, [s]he is no longer the victim of fortune's whims, but is instead directly responsible for h[er] own predicament. Fault on the employee's part separates h[er] from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

*Williams* at ¶ 22, quoting *Tzangas* at 697-698.

{¶32} Accordingly, we cannot say the review commission's determination is unlawful, unreasonable, or against the manifest weight of the evidence. Therefore, Farrar's sole assigned error lacks merit.

{¶33} The judgment is affirmed.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

13

Case No. 2024-L-028