[Cite as *Kohl v. Health Mgt. Solutions, Inc.*, 2015-Ohio-4999.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Tammy R. Kohl, :

      Appellant-Appellant, : No. 15AP-17
(C.P.C. No. 14CV-7855)

v. :

      (ACCELERATED CALENDAR)

Health Management Solutions, Inc., et al., :

      Appellees-Appellees. :

## D E C I S I O N

### Rendered on December 3, 2015

*Tammy R. Kohl*, pro se.

*Michael DeWine*, Attorney General, and *Patria V. Hoskins*, for appellee Ohio Department of Job and Family Services.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant-appellant, Tammy R. Kohl ("appellant") pro se, appeals the December 11, 2014 judgment of the Franklin County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission ("the commission") that denied appellant's unemployment benefits claim. For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On February 20, 2012, appellant began working as a claims examiner for Health Management Solutions ("HMS"), a workers' compensation managed care organization. Appellant worked under the direction of a nurse care manager and handled the non-clinical portions of processing workers' compensation claims. Appellant's job duties encompassed time-sensitive tasks, including calling doctor's offices, updating injured workers, and processing documents. On her date of hire, appellant signed a form

indicating that she received a copy of HMS's employee handbook and that she agreed to abide by the policies and procedures contained therein. HMS also made their policies available to employees through a local intranet.

{¶ 3} HMS performed quarterly audits on all case managers, examining a specific number of claims and determining whether employee performance fell below an established standard. If employee performance fell below the standard, then HMS conducted a full review of the employee's claims. Upon completion of the review, if the employee's work demonstrated deficiencies, then the training director and the employee's supervisor conducted a formal coaching. If, after the formal coaching, the employee's performance was still not meeting established standards, then HMS initiated further disciplinary actions.

{¶ 4} In December 2012, appellant learned that her mother had Stage IV colon cancer. Appellant also began experiencing medical issues in March 2013. Appellant stated that she began to fall behind in her job duties at that time. On April 22, 2013, appellant filed for family medical leave benefits. Appellant first received formal discipline under HMS's disciplinary policy on May 6, 2013. On that date, appellant received a "formal coaching" with Mary Kimberly Jaconette, the training director for HMS, because appellant had fallen below established guidelines for completion of work in the quarter beginning in January 2013 until the end of March 2013, prior to appellant's filing for benefits.

{¶ 5} Appellant next received formal discipline on July 11, 2013 when she received her first formal written warning due to continued job performance issues. On August 28, 2013, appellant received her second formal written warning due to job performance issues. On October 31, 2013, HMS placed appellant on "decision making leave" due to continued job performance issues. Pursuant to HMS's policy, appellant was required to complete and submit an action plan describing the steps she would take to bring her performance to an acceptable level. Jaconette completed the action plan on appellant's behalf, and appellant signed the plan on November 4, 2013. Thereafter, HMS determined the action plan was invalid as appellant did not complete it herself pursuant to their policy.

{¶ 6}   On December 4, 2013, HMS instructed appellant to submit a revised action plan herself by December 9, 2013. Appellant signed a document indicating her understanding of this requirement. On December 9, 2013, appellant signed and submitted her action plan, which stated in entirety the following:

THE FOLLOWING IS THE ACTION PLAN OF TAMMY R. KOHL:
$A$ccept $C$ompensation in Lump Sum $T$hat $I$s $O$f $N$o less
than my gross annual income.

**OR**

$P$ursue $L$itigation $A$s $N$ecessary.

(Jan. 14, 2014 HMS Exhibit, Director's File.) Appellant stated that she composed the action plan because she was "upset" and "it seemed like I was being provoked." (June 30, 2014 Tr. 43-44.) HMS determined that appellant's December 9, 2013 action plan was unacceptable and offered appellant another opportunity to submit a revised action plan. On December 10, 2013, appellant submitted a signed action plan in which she detailed a list of actions to be completed and remedial steps to be taken.  HMS found this action plan acceptable, and appellant returned to work on December 10, 2013.

{¶ 7}   On December 11, 2013, appellant's co-workers approached Anne Csaszar, administrative director of HMS, and reported that appellant was being loud and disruptive in the office during working hours. Specifically, appellant's co-workers reported in e-mails to Csaszar that appellant said she hoped that HMS would fire her because she would be a "rich woman." (Director's File HMS Exhibit, 17/60.) Appellant admitted to saying that she hoped HMS would fire her because she would be a "rich woman," but contended that her co-workers were actually disrupting her. On December 11, 2013, appellant was placed on paid administrative leave. On December 18, 2013, Tod Phillips, executive director of HMS, called appellant and informed her that her employment had been terminated for (1) excessive, loud, boisterous talking; (2) wasting time; and (3) failing to establish performance and productivity standards. The first two factors took place on December 10 and 11; whereas, the performance issues had been ongoing. Csaszar testified that typically claims examiners processed 10-15 requests for treatment a day and created 30-40 reports a day. On December 10, 2013, appellant processed 0

requests and prepared only 6 notes. On December 11, 2013, appellant processed 0 requests and prepared only 3 notes.

{¶ 8}   On December 19, 2013, appellant applied for unemployment compensation benefits. On January 16, 2014, the Ohio Department of Job and Family Services ("ODJFS") issued an initial determination granting unemployment benefits on the basis of discharge without just cause under R.C. 4141.29. Specifically, ODJFS found that appellant was discharged because she was "not able to perform the required work." (Jan. 16, 2014 Initial Determination, 1.)  On appeal by HMS, on February 12, 2014, the director of ODJFS issued a redetermination decision, pursuant to R.C. 4141.281(B), affirming the initial determination that appellant was discharged without just cause.

{¶ 9}   HMS appealed again, asserting that appellant was discharged for performance-related issues and requesting a hearing. On February 18, 2014, ODJFS transferred jurisdiction, pursuant to R.C. 4141.281(B), to the commission for a hearing. The commission assigned the matter to a hearing officer, who conducted a hearing through telephone conference calls as authorized by R.C. 4141.281(D)(3). Testimony was given on February 28 and April 10, 2014. On April 18, 2014, the commission hearing officer affirmed the director's February 12, 2014 redetermination decision.

{¶ 10} HMS timely filed a request for review with the commission, pursuant to R.C. 4141.281(C)(4), and, on May 7, 2014, the commission granted HMS's request. On June 4, 2014, the commission issued a "Rehear Order," pursuant to R.C. 4141.281(C)(6), stating that, "[a]fter a review of the entire record * * * [the commission] will direct a further hearing to be conducted by a Hearing Officer for and on behalf of the [commission]." (Rehear Order, 1.)

{¶ 11} On rehearing, on June 30, 2014, the hearing officer conducted a hearing through a telephone conference call. Phillips, Csaszar, Jaconette, and appellant offered testimony. On July 23, 2014, the commission hearing officer reversed the previous hearing officer's April 18, 2014 determination and held that HMS discharged appellant with just cause. Specifically, the hearing officer on rehearing found that appellant was "disruptive," "engaging individuals in an inappropriate manner," and "insubordinate." (July 23, 2014 Hearing Officer Decision, 3.) Further, the hearing officer found that "[w]hen the totality of the evidence is reviewed there is sufficient fault on [appellant's]

part to create just cause in connection with work for her discharge," and concluded that appellant "was discharged for just cause in connection with work." (July 23, 2014 Hearing Officer Decision, 3.) As a result of this determination, the hearing officer disallowed appellant's December 19, 2013 application for unemployment compensation benefits and provided notice that an order of repayment of benefits would be issued.

{¶ 12} On July 29, 2014, pursuant to R.C. 4141.282, appellant appealed to the trial court. On December 1, 2014, the trial court affirmed the commission's decision.

## II. Assignments of Error

{¶ 13} Appellant appeals assigning the following four errors for our review:

> [I.] The Order dated December 11, 2014 of the Franklin County Common Pleas Court, page 2, 4th paragraph is erroneous, and should indicate the year 2012 in regards to the actual diagnosis of Appellant's mother. It was not 2013, in specific; Appellant's mother was diagnosed with Stage IV Colon Cancer on December 6, 2012.
>
> [II.] The employer failed to provide reliable, substantial and probative evidence that Appellant intentionally caused disruptive behavior or a detriment to the employer. Further, Appellant had never received discipline for disruptive behavior. In fact, the employer created the environment by initiating performance reviews, which began only days after FMLA was approved. Furthermore, none of Appellant's written performance and/or corrective actions indicated issues or complaints about behavior.
>
> [III.] The Hearing Officer of the Review Commission failed to consider Appellant's documents in the Director's file rather than just the evidence offered via phone hearing on June 30, 2014. Therefore, Appellant challenges the decision of the hearing officer reversing and denying unemployment benefits to "Claimant" when there was no new evidence or changed circumstances from the previous Commission hearing on April 10, 2014.
>
> [IV.] Appellant questions the **"hearsay evidence"** of the witness statements regarding disruptive behavior which were prepared by co-workers during the time of Appellant's suspension from **December 11, 2013 through the date of termination, December 18, 2013**. Also, these statements were part of the Director's file, and were deemed not credible, as it was determined by the hearing officer that the witness

> statements prepared by co-workers were not supported due to
> the fact this information was not witnessed by management.

(Emphasis sic.)

{¶ 14} We begin by noting that the brief appellant filed with this court does not comply with App.R. 16(A)(7) because it does not include a separate "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *See Bond v. Village of Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16. A court of appeals "may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). "It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error." *Bond* at ¶ 16, citing *Whitehall v. Ruckman*, 10th Dist. No. 07AP-445, 2007-Ohio-6780, ¶ 20. *See also Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 24 (finding that "the party asserting error * * * bears the burden of affirmatively demonstrating that error").

{¶ 15} Although we recognize that appellant is a pro se litigant, "Ohio courts hold pro se litigants to the same rules and procedures as those litigants who retain counsel. Pro se litigants are not entitled to greater rights, and they must accept the results of their own mistakes." *Williams v. Lo*, 10th Dist. No. 07AP-949, 2008-Ohio-2804, ¶ 18, citing *Ruckman* at ¶ 21. *See also Angus v. Angus*, 10th Dist. No. 14AP-742, 2015-Ohio-2538, ¶ 10 ("While appellate courts will construe pro se filings generously, appellate courts cannot construct legal arguments for an appellant."). Nevertheless, in the interest of justice, we will address appellant's assignments of error.

### A. Standard of Review

{¶ 16} In reviewing a just cause determination, a court may only reverse a decision by the commission if it is unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). *See Hicks v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 13AP-902, 2014-Ohio-2735, ¶ 13. "The duty of the courts is to determine whether the evidence in the record supports the decision of the [commission] and whether that determination applies the correct legal standard." *Dziengelewski v. Knox Cty. Bd. of Edn.*,

10th Dist. No. 13AP-612, 2014-Ohio-2282, ¶ 7. The review commission's final decision may not be reversed as against the manifest weight of the evidence if it is supported by some competent, credible evidence in the record going to all the essential elements of the case. *Dublin v. Clark*, 10th Dist. No. 05AP-431, 2005-Ohio-5926, ¶ 22, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. A reviewing court may not make factual findings or determine a witness's credibility, but must affirm the commission's finding if some competent, credible evidence supports it. *Hicks* at ¶ 13, citing *Williams v. Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20. "The focus of an appellate court when reviewing an unemployment compensation appeal is upon the commission's decision, not the trial court's decision." *Mustafa v. St. Vincent Family Ctrs., Inc.*, 10th Dist. No. 12AP-305, 2012-Ohio-5775, ¶ 6.

### B. Just Cause Discharge

{¶ 17} "The purpose of the Unemployment Compensation Act is to provide financial assistance to persons without employment through no fault of their own." *Dziengelewski* at ¶ 8, citing *James v. Ohio State Unemp. Rev. Comm.*, 10th Dist. No. 08AP-976, 2009-Ohio-5120, ¶ 10, citing *Salzl v. Gibson Greeting Cards, Inc.*, 61 Ohio St.2d 35, 39 (1980). R.C. 4141.29 sets forth the criteria for eligibility for unemployment compensation benefits. Pursuant to R.C. 4141.29(D)(2)(a), "[a] claimant who * * * has been discharged for just cause in connection with his or her work is not entitled to unemployment compensation benefits." *Braun v. Indep. Taxi Cab Assn. of Columbus, Inc.*, 10th Dist. No. 11AP-94, 2011-Ohio-6056, ¶ 13. "The claimant has the burden to prove his or her entitlement to benefits." *Id.*, citing *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985).

{¶ 18} " ' "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." ' " *Dziengelewski* at ¶ 9, quoting *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist.1975). Thus, in the context of employment termination, just cause is found when a person of ordinary intelligence would conclude that the employee's conduct and surrounding circumstances justified the employee's discharge. *Hicks* at ¶ 33, citing *Chambers v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-1043, 2007-Ohio-1493, ¶ 7; *Dziengelewski* at ¶ 9, citing *James* at ¶ 11. "Just

cause for discharge exists where ' "the employee, by his actions, demonstrated an unreasonable disregard for his employer's best interests." ' " *Hicks* at ¶ 33, quoting *Mayes v. Bd. of Review, Ohio Bur. of Emp. Servs.*, 32 Ohio App.3d 68 (10th Dist.1986), quoting *Kiikka v. Ohio Bur. of Unemp. Servs.*, 21 Ohio App.3d 168, 169 (8th Dist.1985). "The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case." *Irvine* at 17.

{¶ 19} Fault on the part of the employee is an essential component of a just cause termination. *Hicks* at ¶ 33, quoting *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 695 (1995) (" 'Fault on the employee's part separates him from the Act's intent and the Act's protection.' "). "However, there is a distinction between the degree of fault required on the part of the employee to justify a denial of unemployment benefits and the grounds required for discharge." *Dziengelewski* at ¶ 10, citing *James* at ¶ 12. "The 'just cause' sufficient to justify the discharge of an employee need not be as grave as the 'just cause' required to disqualify a discharged employee from receiving unemployment compensation under R.C. 4141.29." *Id.*, citing *James* at ¶ 13.

{¶ 20} In her first assignment of error, appellant asserts that the trial court erred by stating that appellant's mother was diagnosed with Stage IV colon cancer in 2013 instead of December 2012. Although the record reflects that the trial court incorrectly stated this fact, appellant fails to demonstrate how such error is relevant to the commission's determination of just cause. As our focus in reviewing an unemployment compensation appeal is on the commission's decision, not the trial court's decision, we find appellant's first assignment of error to be without merit. *Mustafa* at ¶ 6. Accordingly, appellant's first assignment of error is overruled.

{¶ 21} In her second and fourth assignments of error, appellant essentially challenges the manifest weight of the evidence. Appellant asserts that there was no reliable, substantial, and probative evidence that appellant caused disruptive behavior. Testimony was offered by Csaszar that appellant's co-workers reported appellant causing a disturbance in the office on December 10 and 11, 2013. Although Csaszar did not personally observe appellant being disruptive, after examining appellant's work completed during the days in question, Csaszar found that appellant completed only a minimal amount of work compared to similarly situated employees. Further, appellant

admitted that she stated that she made the statements attributed to her because she was "angry." (June 30, 2014 Tr. 46.) Furthermore, Phillips testified that his investigation revealed that appellant was "disrupting her work area * * * being very disruptive back there * * * and a couple of coworkers came to Ms. Csazsar [sic] and complained." (June 30, 2014 Tr. 9.) He further testified that the staff reported the disruptive behavior had been going on for two days. Although appellant disputes the credibility of the evidence offered against her, it is not the place of this court to make factual findings or determine witness credibility. *Hicks* at ¶ 13, citing *Williams* at ¶ 20. Having thoroughly reviewed the record, on the facts and circumstances of this case, we cannot agree that the commission's decision was against the manifest weight of the evidence as it was supported by some competent, credible evidence. *Id.* Appellant's second and fourth assignments of error are overruled.

{¶ 22} In her third assignment of error, appellant asserts that the commission erred by failing to consider evidence in the director's file in addition to the evidence presented at the June 30, 2014 hearing because there was "no new evidence or changed circumstances" from the previous hearing. First, appellant offers no support for her statement that the commission hearing officer failed to consider prior evidence or that the hearing officer considered only the testimony offered at the June 30, 2014 hearing before issuing the July 23, 2014 decision. Although the hearing officer stated at the hearing that it was his "intention to [proceed] de novo," appellant fails to demonstrate how this resulted in error. (June 30, 2014 Tr. 3.) R.C. 4141.281(C)(6) provides that the commission is authorized to order that the appeal be reheard at the hearing officer level and that, "[w]hen a further hearing is provided or the decision is rewritten, the commission may affirm, modify, or reverse the previous decision." Thus, we find appellant's assignment of error to be without merit. Accordingly, appellant's third assignment of error is overruled.

## III. Disposition

{¶ 23} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and KLATT, J., concur.