[Cite as *Kent State Univ. v. Hannam*, 2019-Ohio-2971.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| KENT STATE UNIVERSITY, | : | **O P I N I O N** |
| Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0109** |
| WILLIAM B. HANNAM, et al., | : | |
| Appellant. | : | |

Appeal from the Portage County Court of Common Pleas, Case No. 2017 CV 01056.

Judgment:  Affirmed.

*John N. Childs* and *Bryan E. Meek,* Brennan, Manna & Diamond, LLC, 75 East Market Street, Akron, OH  44308 (For Appellee).

*Michelle Wrona Fox,* Community Legal Aid Services, 11 Central Square, 7th Floor, Youngstown, OH  44503 (For Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, William B. Hannam, appeals the November 30, 2018 judgment of the Portage County Court of Common Pleas reversing the Ohio Unemployment Compensation Review Commission's decision to award appellant unemployment benefits for a certain period in August 2017.  For the reasons discussed herein, the decision of the Portage County Court of Common Pleas is affirmed.

{¶2}    The facts are undisputed.  Mr. Hannam was employed by the Kent State University as a part-time adjunct professor in the Music Department for the Spring 2017

semester, which ended on May 15, 2017. On June 13, 2017, Mr. Hannam received a letter from the University offering "reasonable assurance," pursuant to the University's employment practices, that Mr. Hannam would be needed for the following "fall and/or spring semester(s)" (the "Reasonable Assurance Letter" or the "Letter"). The Letter did not specify which classes Mr. Hannam would teach but Mr. Hannam testified that he knew in the spring of 2017 that he was listed as a professor on the fall class schedule. The Letter stated that his continued employment was subject to the University's "employment practices." Both the University and Mr. Hannam understood this to mean that Mr. Hannam's employment was contingent on sufficient student enrollment, with priority to full-time faculty pursuant to the faculty Collective Bargaining Agreement, and budget approval. Ultimately, the University confirmed Mr. Hannam's classes had sufficient enrollment for the fall semester on August 11, 2017, and on August 28, 2017, Mr. Hannam began teaching.

{¶3} Shortly after receiving the Reasonable Assurance Letter, Mr. Hannam applied to the Ohio Department of Job and Family Services (ODJFS) for unemployment benefits. On July 7, 2017, ODJFS determined that Mr. Hannam was totally unemployed due to lack of work and allowed his application for benefits. The University timely appealed and, upon reconsideration, ODJFS modified the decision to allow benefits from May 15, 2017 through June 17, 2017, but determined that starting the week of June 18, 2017, Mr. Hannam had reasonable assurance of employment for the next academic year and therefore was not eligible for benefits from June 18, 2017 through August 26, 2017. That decision also ordered Mr. Hannam to repay $690.00 that ODJFS

2

determined to be overpaid benefits. Mr. Hannam timely appealed and ODJFS transferred jurisdiction to the Review Commission pursuant to R.C. 4141.281(B).

{¶4} In August 2017, a Review Commission Hearing Officer conducted an evidentiary hearing, and, in the September 8, 2017 decision, the Hearing Officer determined Mr. Hannam did not have reasonable assurances until the week ending August 19, 2017, i.e., the week the University confirmed adequate enrollment in Mr. Hannam's classes, and that Mr. Hannam, accordingly, was entitled to benefits from June 18, 2017 through August 12, 2017. The University requested further review, and on November 15, 2017, the Review Commission ultimately affirmed their decision.

{¶5} The University then appealed to the Portage County Court of Common Pleas, which reversed the Review Commission's grant of unemployment benefits, finding Mr. Hannam had reasonable assurances as of the June 13, 2017 Reasonable Assurances Letter. The instant appeal followed.

{¶6} Mr. Hannam assigns two errors for our review, which we address together:

{¶7} [1] The trial court erred by reversing the Unemployment Compensation Review Commission's decision when it found Mr. Hannam was ineligible for benefits since he had reasonable assurance of employment because the Review Commission decision was not unlawful, unreasonable or against the manifest weight of the evidence.

{¶8} [2] The trial court erred by reversing the Unemployment Compensation Review Commission's decision to grant Mr. Hannam unemployment compensation benefits because Mr. Hannam did not have reasonable assurances of employment as defined by Unemployment Insurance Program Letter 5-17.

{¶9} In reviewing the decision of the trial court in this matter, we apply a manifest weight of the evidence standard of review. According to R.C. 4141.282(H), "[i]f the [reviewing] court finds that the decision of the commission was unlawful,

3

unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."  Though R.C. 4141.282 specifically addresses appeals to the court of common pleas, and not to appellate courts, the Supreme Court of Ohio has held that, in appeals from the unemployment compensation review commission, the same standard of review applies to both the court of common pleas and the appellate court.  *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694 (1995), paragraph one of the syllabus.  "When we review the trial court's decision, we apply the same standard. In such cases, this Court is 'required to focus on the decision of Review Commission, rather than that of the common pleas court[.]'" *Univ. of Akron v. Ohio Dept. of Job & Family Servs.*, 9th Dist. Summit No. 24566, 2009-Ohio-3172, ¶9, quoting *Markovich v. Employers Unity, Inc.*, 9th Dist. Summit No. 21826, 2004–Ohio–4193.

{¶10}  Furthermore, "[t]he court's role is to determine whether the decision of the Review Commission is supported by evidence in the certified record. * * * If the reviewing court finds that such support is found, then the court cannot substitute its judgment for that of the Review Commission. * * * 'The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Review Commission's] decision.'" (citations omitted.)  *Univ. of Akron, supra,* at ¶11, quoting *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985).

{¶11}  The Ohio Revised Code sets out the eligibility requirements to receive unemployment compensation benefits between academic terms.  Specifically, R.C. 4141.29(I)(1) pertains to university employees and provides, in pertinent part:

4

**{¶12}** (a) Benefits based on service in an instructional, research, or principal administrative capacity in an institution of higher education, as defined in division (Y) of section 4141.01 of the Revised Code; or for an educational institution as defined in division (CC) of section 4141.01 of the Revised Code, shall not be paid to any individual for any week of unemployment that begins during the period between two successive academic years or terms, or during a similar period between two regular but not successive terms or during a period of paid sabbatical leave provided for in the individual's contract, if the individual performs such services in the first of those academic years or terms and has a contract or a reasonable assurance that the individual will perform services in any such capacity for any such institution in the second of those academic years or terms.

**{¶13}** With the facts not in dispute, the case sub judice turns on what it means to have "reasonable assurance" of continued employment as it pertains to R.C. 4141.29(I)(1). Effective in November 1983, however, the Ohio Revised Code was amended to eliminate the definition of "reasonable assurance" for this section, and there has been little precedent since established by this court or the Supreme Court of Ohio on the meaning, interpretation, or definition of "reasonable assurances" as applied to this Code Section. In *University of Toledo v. Heiny,* 30 Ohio St.3d 143, 146 (1987)*,* the Supreme Court of Ohio held that reasonable assurance, as applied to a similar Code section, is sufficient if the employer informs the employee that employment is available. And, as applied to R.C. 4141.29(I)(1), in *Knight v. Administrator, Ohio Bureau of Employment Services,* 28 Ohio St.3d 8, 10-11 (1986), the Supreme Court of Ohio found that an offer of employment for the following academic year or terms constituted reasonable assurance despite being contingent on student enrollment.

**{¶14}** The Reasonable Assurance Letter Mr. Hannam received reads, in pertinent part:

**{¶15}** I am also writing to offer reasonable assurance, consistent with the University's employment practices, that the School of Music will

5

need your services again during the next fall and/or spring semester(s). The salary for any such appointment will be no less than the rate per credit hour that you received this semester.

{¶16} I hope that you will be interested in maintaining your association with Kent State University. If you are available to teach in the fall and/or spring semester(s), please notify me within fifteen (15) days of your receipt of this letter.

{¶17} The University acknowledges that, though it is not the University's intention at the time of sending reasonable assurance letters, occasionally circumstances dictate that an adjunct professor who was given a reasonable assurance letter is not hired back the following semester. Though this happens less often than not, Dr. Jeff Judge, Director of the ESL Center at the University, stated in an e-mail to Mr. Hannam's colleague, an adjunct professor that received a Reasonable Assurance letter but was not hired back the following semester, that "a reasonable assurance letter does **NOT** guarantee work with Kent State University. It is kind of an intent to hire, if we have enough classes to offer. If our student population drops and we don't have classes to offer, the letter does not obligate Kent State University to provide you classes to teach." (Emphasis original.)

{¶18} We are not of the opinion, however, that reasonable assurance requires a guarantee of work. Black's Law Dictionary defines "reasonable," in pertinent part, as:

{¶19} 1. Fair, proper, or moderate under the circumstances; sensible <reasonable pay>. 2. According to reason <your argument is reasonable but not convincing>. See PLAUSIBLE (1). REASONABLE, Black's Law Dictionary (11th ed. 2019).

{¶20} Black's Law Dictionary also provides a definition for "assurance": "Something that gives confidence; the quality, state, or condition of being confident or secure <self-assurance>." ASSURANCE, Black's Law Dictionary (11th ed. 2019).

6

{¶21} Neither the definition of "reasonable" nor "assurance" requires absolute certainty or a guarantee. Indeed, the legislature could have easily used stronger language than "reasonable assurance" if it intended to require a guarantee or certainty of continued employment. By its very nature "reasonable assurance" precludes the requirement of absolute certainty. Thus, "reasonable assurance" is necessarily something less than an absolute guarantee.

{¶22} On the other hand, we agree with the Ninth District in rejecting the definition of reasonable assurance as "'a mere likelihood that employment could occur.'" *Univ. of Akron v. Ohio Sept. of Job & Family Servs.*, *supra* at ¶14, quoting *Allen v. Administrators, OBES,* 1st Dist. No C-960705, 1997 WL 249438, at *2 (May 14, 1997). The intent of unemployment compensation legislation in educational institutions is to provide benefits to employees whose employment has ended at the close of the academic year and whose employment prospects for the following academic year are doubtful. *Heiny, supra,* at 146. Unemployment benefits are not intended to "'subsidize the vacation periods of those who knew well in advance that they may be laid off for certain specified periods.'" *Id.,* quoting *Davis v. Commonwealth,* 39 Pa.Commw. 146, 147 (1978). In other words, unemployment benefits are intended to cover unanticipated periods of unemployment, however, the break between academic years is not an unanticipated period of unemployment. *Wolfe v. Administrator, Ohio Bureau of Employment Services,* 10th Dist. Franklin, No. 98AP-609, 1998 WL 938593, at *2 (Dec. 22, 1998). ("As long as the teacher has a reasonable assurance of continuing employment after the vacation, the teacher is not confronted with an unexpected loss of earned income.")

7

{¶23} Therefore, what constitutes "reasonable assurance" must fall somewhere between the mere likelihood of continued employment and a guarantee of continued employment.

{¶24} In the case sub judice, ODJFS determined that the Reasonable Assurance Letter did not actually provide reasonable assurance to Mr. Hannam because "it does not specifically state the date of return that would be consistent with the next scheduled term." Though ODJFS modified this determination, the Review Commission ultimately found the initial determination of the ODJFS to be the correct decision and disallowed benefits until the week Mr. Hannam knew sufficient enrollment to continue his classes had been obtained for the following fall semester. Thus, it appears the Review Commission found the surrounding circumstances too uncertain to constitute "reasonable assurance" of continued employment until the fulfillment of the contingencies were confirmed. We find this applies too strict a standard for reasonable assurance.

{¶25} Dr. Thomas Janson, Former Chair of the KSU Faculty Senate and Assistant Director for the School of Music, wrote a letter to ODJFS stating that in his 35 years of employment at the University's School of Music, there was only one occasion when an adjunct professor was not hired back the following semester due to a policy that full-time faculty schedules be filled prior to part-time faculty's schedules. Though Mr. Hannam presented this letter in support of his argument, we find it tends to support the University's argument that when a Reasonable Assurance Letter is issued, rarely does the University not hire that professor, especially in the School of Music.

{¶26} Moreover, Mr. Hannam had been employed in the same capacity since 2012. He received a reasonable assurance letter at the end of each academic year, and only once, and six years prior, had he not been hired back. Moreover, the reason he was not hired back was due to circumstances outside the control of the University. And for the six years following, those circumstances had not yet reoccurred.

{¶27} The language of the reasonable assurance letter is unambiguous: with the exception of circumstances outside the University's control, the "School of Music will need your services." While not binding the University if unforeseen circumstances outside the University's control preclude its fulfilment, the language of the Letter leaves no uncertainty as to its desire to reemploy Mr. Hannam the following academic year. Moreover, Mr. Hannam testified that during the spring 2017 semester, he was officially listed as the professor for three courses on the University's website for faculty for the fall 2017 semester.

{¶28} Mr. Hannam argues that the language "next fall and/or spring semester(s)" is too ambiguous to provide reasonable assurance. However, R.C. 4141.29(I)(1) refers to employment in the following "academic year." As both the fall and spring semesters occur in the following academic year, we do not find this argument persuasive.

{¶29} Further, "[a]lthough unemployment compensation statutes are to be liberally construed [in favor of the person to be benefited], neither the agency nor the trial court has a duty to construe facts more favorably to either party. Further, '[a] direction to liberally construe a statute in favor of certain parties will not authorize a court to read into the statute something which cannot be reasonably be implied from the language of the statute.'" Citations omitted. *Burns v. Director, Ohio Dept. of Job &*

9

*Family Services*, 11th Dist. Trumbull Nos. 2004-T-0071 and 2004-T-0072, 2005-Ohio-6290, ¶47. *See also, Ducsay v. Bd. of Rev.*, 11th Dist. Lake No. 7-273, 1980 WL 352230, *4 (Sept. 15, 1980).

{¶30} In viewing the totality of the circumstances, we find Mr. Hannam had more than a mere likelihood of continued employment but less than guaranteed continued employment. Accordingly, the Review Commission lost its way when it determined Mr. Hannam did not have reasonable assurance of continued employment until the University was certain there was sufficient enrollment to hire him for the following academic year. Thus, the Review Commission's decision was against the manifest weight of the evidence and we affirm the trial court's decision to reverse.

{¶31} Mr. Hannam asserts that we must apply a federal Unemployment Insurance Program Letter No. 5-17 ("Program Letter") to the issue sub judice. We need not address the extent to which the Program Letter is binding on our decision because even if we were to consider the Program Letter we do not find it supports Mr. Hannam's argument. The Program Letter states that "[i]f any contingencies in the offer are within the employer's * * * control, the state agency must determine the claimant does not have a reasonable assurance. * * * Generally, the Department considers contingencies based upon circumstances such as enrollment, funding, such as appropriation for a specific course, and seniority to not be in the employers' control." These are the very contingencies Mr. Hannam and the University understood to determinative of his reemployment for the following academic year. Thus, according to the Program Letter, the existence of these contingencies does not destroy a reasonable assurance.

{¶32} Finally, we address Mr. Hannam's assertion that the trial court applied a de novo standard of review when it should have applied a manifest weight of the evidence standard of review. We do not find merit to this assertion. The trial court's November 30, 2018, Judgment Entry expressly states it applied a manifest weight of the evidence standard of review. Though it does not expressly state in its conclusion that the Review Commission's decision was against the manifest weight of the evidence, it is apparent from the court's determination that it reviewed the entirety of the circumstances and found that the Review Commission had lost its way.

{¶33} Thus, Mr. Hannam's assignments of error have no merit. The decision of the Portage County Court of Common Pleas reversing the Review Commission's November 15, 2017 decision is affirmed.


TIMOTHY P. CANNON, J.,

MATT LYNCH, J.,

concur.