[Cite as *Marlo v. Dir., Ohio Dept. of Job & Family Servs.*, 2021-Ohio-1366.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO


GEOFFREY MARLO,                          :        **O P I N I O N**

          Appellant,               :

          - vs -                        :        **CASE NO. 2020-P-0082**

DIRECTOR, OHIO DEPARTMENT OF             :
JOB AND FAMILY SERVICES, et al.,
                                         :
          Appellees.               :

                                         :


Civil Appeal from the Portage County Court of Common Pleas, Case No. 2019 CV 01008.

Judgment: Affirmed.


*John A. McNally, IV*, 100 E. Federal Street, 6th Floor, Youngstown, Ohio 44503 (For Appellant).

*Dave Yost*, Ohio Attorney General, and *Patrick MacQueeney,* Assistant Attorney General, 615 West Superior Avenue, 11th Floor, Cleveland, Ohio 44113-1899 (For Appellee, Director, Ohio Department of Job and Family Services).

*Christopher J. Newman* and *J. Michael Thompson,* Henderson, Covington, Messenger, Newman & Thomas Co., LPA, 6 Federal Plaza Central, Suite 1300, Youngstown, Ohio 44503 (For Appellee, M&A Distributing Co., Inc.).


THOMAS R. WRIGHT, J.

{¶1}    Geoffrey Marlo appeals the trial court's judgment, affirming the final decision of the Unemployment Compensation Review Commission which denied Marlo's application for unemployment benefits.  We affirm.

{¶2} Beginning June 8, 2015, Marlo was employed as a Class A CDL delivery truck driver by M&A Distributing Co., Inc. ("M&A"), doing business as Superior Beverage Group. M&A discharged Marlo on May 21, 2019. Marlo filed an application for unemployment benefits, which the Office of Unemployment Insurance Operations denied in August 2019 on the basis that Marlo was discharged for just cause. Marlo appealed, and the matter was transferred to the Review Commission.

{¶3} A telephonic hearing was held before a hearing officer of the Review Commission on October 30, 2019. Marlo offered testimony, as did the executive vice president of M&A, Joseph McHenry.

{¶4} The record before the Review Commission also contains copies of relevant sections of Superior Beverage Group's Associate Handbook and Federal Motor Carrier Safety Regulations ("Safety Regulations"), as well as Marlo's written acknowledgment of receipt of both documents on his date of hire. The handbook includes an "associate conduct" policy, which provides that employees are subject to immediate discharge under certain circumstances, including "insubordination and/or failure to follow supervisory instructions" and "refusal to submit upon request to a substance abuse test." The "drug and alcohol program" in the handbook provides that employees are subject to drug and alcohol testing in the following circumstances: based upon reasonable suspicion; following work-related accidents; in certain circumstances after completing a drug or alcohol rehabilitation program; to comply with DOT testing guidelines, such as random testing; and in compliance with the company's random drug testing for non-DOT associates.

{¶5}   The testimony establishes that Marlo was notified on May 15, 2019, that he was randomly selected for a DOT substance abuse test, for which he was required to immediately submit.  Marlo reported to the DOT-approved testing facility the following evening.  When questioned as to the timeliness of Marlo's reporting, McHenry testified he thought reporting the next day was within the guidelines.

{¶6}   Upon arrival, Marlo submitted a urine sample on site.  Marlo was immediately informed that his sample was outside the acceptable temperature range, and, according to the Safety Regulations, he would have to provide another sample before leaving the facility.  If he failed to give an adequate sample within three hours, his results would be considered "positive."  After drinking water and attempting twice within the next three hours, Marlo could not provide another sample.

{¶7}   Marlo was discharged by M&A on May 21, 2019, for "insubordination and/or failure to follow instructions" and "refusal to submit upon request to a substance abuse test," which was also noted as a violation of DOT's testing guidelines.

{¶8}   Marlo described the test as a "controlled test."  He testified:

> When you enter the test facility, you are directed to empty your pockets into a locker, raise your shirt, make sure you don't have any * * * shall we say additional appendages on you in the form of * * * other fluids that you might be carrying with you.  You enter an observed room that has all the plumbing shut off and dye in the toilet and you put a sample into a sample cup and it has to be "X" amount of volume.  * * *  And then as soon as you finish that you give it to the tester and they now seal it up and send it off.

Marlo stated he was informed the sample was not within the temperature band on the specimen cup and would have to give another sample.  He said he was provided with two cups of water but was only able to "choke down" one cup; the facilitators would not allow

3

him to retrieve water from his vehicle. After three hours, he was unable to supply another urine sample. He reported the situation to human resources the following morning, was subsequently informed not to report to work, and was terminated four days later.

{¶9} Marlo further testified that, contrary to language in the Safety Regulations, he was never advised to obtain an evaluation from a licensed physician within five days of the test as to why he could not medically provide a urine sample within that three-hour period of time. The Safety Regulations are published at 49 C.F.R. Part 40, and the specific regulation provides:

> As the [Designated Employer Representative], when the collector informs you that the employee has not provided a sufficient amount of urine (see paragraph (b)(4) of this section), you must, after consulting with the [Medical Review Officer], direct the employee to obtain, within five days, an evaluation from a licensed physician, acceptable to the [Medical Review Officer], who has expertise in the medical issues raised by the employee's failure to provide a sufficient specimen.

*See* 49 C.F.R. 40.193(c). Marlo also stated that he offered to submit samples for a blood test or hair follicle test at his own expense but was not permitted to do so.

{¶10} McHenry testified that Marlo had previously been suspended for two days in May 2018 for a similar situation. Marlo had been off work due to a work-related accident and injury. McHenry stated that Marlo did not provide a drug screen or post-accident drug test within DOT's time guidelines. Marlo was written up for the following violations:

> 1. Insubordination and/or failure to follow supervisory instructions
> 2. Refusal to submit upon request to a substance abuse test
> 3. Carrying or possessing dangerous weapons on the job or on company property
> 4. Violation of the "Stay home if you exhibit flu-like symptoms policy"

4

The letter further warned, "Any further instances may include further discipline up to and including discharge." McHenry testified that Marlo was warned that if it happened again he would be subject to discipline, including possible discharge. Marlo testified that he had been transported unconscious to the hospital following the accident and released four days later, during which time he was not requested to submit a post-accident drug screen.

{¶11} The hearing officer concluded that Marlo was discharged by M&A for just cause in connection with work under R.C. 4141.29(D)(2)(a).

{¶12} Marlo's subsequent appeals to the full Review Commission and the trial court were denied. Now, in his appeal to this court, Marlo advances one assignment of error:

> The Portage County Common Pleas Court erred in affirming the November 20, 2019 Determination of the Unemployment Compensation Review Commission in affirming the October 31, 2019 decision of a UCRC Hearing Officer when the Determination of the Commission and its Hearing Officer was unlawful, unreasonable, or against the manifest weight of the evidence as no just cause existed for the termination of Appellant's unemployment.

{¶13} A claimant is not eligible for unemployment compensation benefits if the director of ODJFS finds that the claimant "has been discharged for just cause in connection with the individual's work[.]" R.C. 4141.29(D)(2)(a). A claimant has the burden of proving his or her entitlement to unemployment compensation benefits, including the issue of "just cause." *Holzer v. Ohio Unemp. Comp. Rev. Comm.*, 11th Dist. Portage No. 2011-P-0011, 2011-Ohio-6523, ¶ 15, citing *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985).

5

{¶14} "The term 'just cause' has not been clearly defined in our case law. '* * * Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12, 335 N.E.2d 751 (10th Dist.1975). "The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the [Review Commission]." *Irvine* at 17.

{¶15} Pursuant to R.C. 4141.282(H), "The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." "This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in [the Ohio Supreme Court]." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995), citing *Irvine* at 17-18. Thus, "[a]n appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas* at paragraph one of the syllabus.

{¶16} The appellate court is required to focus on the decision of the Review Commission rather than that of the common pleas court. *Kent State Univ. v. Hannam*, 11th Dist. Portage No. 2018-P-0109, 2019-Ohio-2971, ¶ 9. "Furthermore, '[t]he court's role is to determine whether the decision of the Review Commission is supported by

6

evidence in the certified record.  * * *  If the reviewing court finds that such support is found, then the court cannot substitute its judgment for that of the Review Commission. * * *  "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Review Commission's] decision."'"  *Id.* at ¶ 10, quoting *Univ. of Akron v. Ohio Dept. of Job & Family Services*, 9th Dist. Summit No. 24566, 2009-Ohio-3172, ¶ 11, quoting *Irvine*, 19 Ohio St.3d at 18, 653 N.E.2d 1207.  Every reasonable presumption must be made in favor of the decision and the findings of fact of the Review Commission. *Holzer*, 2011-Ohio-6523, at ¶ 12.

{¶17}  Marlo contends the trial court erred in affirming the Review Commission's determination that just cause existed for the termination of his employment with M&A because said determination was unlawful, unreasonable, or against the manifest weight of the evidence.

{¶18}  Marlo advances several arguments, one of which is that M&A's stated rationale for his termination "remains ever-changing."  He directs us to the May 21, 2019 termination letter and the response to the Office of Unemployment Operations' "Request to Employer for Separation Information." The termination letter provided that Marlo was terminated for "insubordination and/or failure to follow supervisory instructions" and "refusal to submit upon request to a substance abuse test"; "in addition, you failed to be in compliance with the DOT testing guidelines (ie: Random, post-accident, reasonable cause, return to work) for DOT associates."  M&A also provided the following responses to questions in the Request:

> **What was the reason the claimant was separated from employment (quit, discharge, laid off, leave of absence etc.)?**

7

Claimant violated progressive discipline and last chance agreement of May 16, 2018 of insubordination, failure to follow supervisory instructions and refusal to submit to a mandatory substance abuse test.

**If you have any additional information you would like to provide, please explain.**
After previous acknowledged warning with described consequences, claimant either provided a fake specimen or specimen not within temperature range then refused to submit another observed specimen within a mandatory timeframe.

**What was the final event and date that led to the claimant's discharge?**
Failure to submit to a mandatory D.O.T. drug screen on 5/16/19.

Each statement made by M&A consistently reveals the reason Marlo was discharged regarded his conduct surrounding the substance abuse test administered on May 16, 2019. Marlo's argument lacks merit.

{¶19} Marlo also takes issue with M&A's characterization of the May 16, 2018 suspension letter as a "last chance agreement" or evidence of "progressive discipline." The letter notified Marlo that he was suspended for two days without pay for just cause, and it further warned, "Any further instances may include further discipline up to and including discharge." Marlo's argument is not well taken—he was terminated for the reasons stated in the subsequent May 21, 2019 termination letter, which are not dependent upon the warning he received one year prior. Any mischaracterization of the former letter does not affect disposition of the matter at hand.

{¶20} The core of Marlo's dispute with the just cause determination is that he believes he complied with M&A's directions and DOT regulations as to the random substance abuse test and did not refuse to submit a urine sample—he reported to the approved testing facility and provided a urine sample; when the sample failed to register

at an appropriate temperature for an unknown reason, he remained for several hours and twice more attempted to provide an adequate sample; when unsuccessful, he suggested alternative testing methods but was denied. He contends, therefore, that the requisite degree of employee fault is not present here.

{¶21} "The [Unemployment Compensation] Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination." *Tzangas,* 73 Ohio St.3d at 697-698, 658 N.E.2d 1207. "[T]he question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination." *Id.* at 698, citing *Irvine,* 19 Ohio St.3d at 17, 653 N.E.2d 1207. "Fault" does not, however—and contrary to Marlo's suggestion—require misconduct on the part of the employee. *Reddick v. Sheet Metal Prods. Co.,* 11th Dist. Lake No. 2009-L-092, 2010-Ohio-1160, ¶ 22, citing *Sellers v. Bd. of Review,* 1 Ohio App.3d 161, 164, 440 N.E.2d 550 (10th Dist.1981) and *Schienda v. Transp. Research Ctr.,* 17 Ohio App.3d 119, 121, 477 N.E.2d 675 (3d Dist.1984).

{¶22} Here, while there are conflicting innuendos as to whether Marlo provided a fake specimen and refused to provide a second specimen, or whether there was something wrong with the specimen collection cup and Marlo had a medical reason that

9

rendered him unable to provide a second sample—the evidence in the certified record supports the inference drawn by the Review Commission that Marlo is directly responsible for his own predicament. Although considered timely, Marlo did not report to the testing facility until approximately 7:00 p.m. on the day after he received notification of his random selection, which is far from immediate; the only urine sample he provided was outside the appropriate temperature range, suggesting he did not produce the urine sample on site as required; and he refused to drink enough water to produce a valid sample within the three-hour window provided. Further, it was within the province of the factfinder to evaluate credibility regarding Marlo's allegation that the testing facility's report required his employer to direct him to obtain an evaluation from a licensed physician within five days of the test, as provided in the Safety Regulations.

{¶23} The conclusion that M&A was reasonable in finding fault on behalf of Marlo to support a "just cause" termination is not against the manifest weight of the evidence. The fact that reasonable minds could weigh the evidence and reach a contrary conclusion is not a basis for reversal. *Irvine*, 19 Ohio St.3d at 18, 653 N.E.2d 1207; *Reddick* at ¶ 20. Finally, Marlo has not demonstrated anything unreasonable or unlawful about the Review Commission's determination. The trial court did not err in affirming the final decision of the Review Commission.

{¶24} The sole assigned error lacks merit.

{¶25} The judgment of the Portage County Court of Common Pleas is affirmed.


MARY JANE TRAPP, P.J.,
MATT LYNCH, J.,
concur.

10